**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HIGH IQ NETWORKS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>*Defendant.* | Case No. 2:26-cv-00865<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff High IQ Networks LLC ("Plaintiff" or "High IQ") makes the following allegations against Defendant Cisco Systems, Inc. ("Defendant" or "Cisco"):

**INTRODUCTION**

1. This complaint arises from Cisco's unlawful infringement of six United States patents owned by High IQ: United States Patent Nos. 7,660,303 (the "'303 Patent"), 7,808,931 (the "'931 Patent"), 7,697,532 (the "'532 Patent"), 6,952,397 (the "'397 Patent"), 8,009,684 (the "'684 Patent"), and 6,731,607 (the "'607 Patent") (collectively, the "Asserted Patents" or the "Patents-in-Suit"). The Asserted Patents claim inventions in network communication technology, including point-to-multipoint forwarding in Layer-2 bridged networks, high-capacity multi-ring packet networks, frame concatenation with drop precedence assignment, communication in bidirectional ring networks with single-direction receiving, and network interface auto-configuration in access multiplexing systems.

2. The Asserted Patents represent foundational innovations in carrier-grade network communication technology. The inventions arose from research and development in packet-based network transport, ring network architectures, and Ethernet-based access multiplexing systems that have become essential building blocks of modern telecommunications, enterprise, and industrial network infrastructure.

3. For decades, telecommunications carriers relied on legacy time-division multiplexing ("TDM") and Synchronous Optical Networking ("SONET") and Synchronous Digital Hierarchy ("SDH") ring architectures to transport voice and data traffic across metropolitan and access networks. Those legacy systems were reliable, but they were rigid, inefficient in their use of bandwidth, and costly to operate and maintain. As demand for data services grew with the rise of the Internet, the telecommunications industry recognized the need to transition from circuit-switched TDM networks to packet-based Ethernet transport networks that could allocate bandwidth more efficiently and support diverse data services.

4. That transition presented formidable engineering challenges. Engineers needed protocols and architectures that could deliver the carrier-grade reliability, protection switching, and quality-of-service guarantees expected of telecommunications networks while capturing the cost efficiency and flexibility of Ethernet technology. Among the most significant of those challenges were designing resilient ring topologies for Ethernet transport; developing efficient mechanisms for network interface auto-configuration in access multiplexing systems; engineering traffic management for bidirectional ring networks; enabling point-to-multipoint functionality within bridged network environments; preserving drop precedence when many small packets are carried together in a single transport frame; and creating high-capacity ring communication architectures capable of serving modern bandwidth demands.

5. The inventors whose work is at issue in this case, working at Orckit Communications Ltd. and Corrigent Systems Ltd. (later Orckit-Corrigent Ltd.), were among the pioneers who solved these challenges. Through years of intensive research and development and the investment of substantial resources, these engineers developed breakthrough innovations in carrier Ethernet transport, ring network protection, frame concatenation, traffic engineering, and network management that enabled the transition from legacy TDM networks to modern packet-based telecommunications infrastructure.

6. Corrigent Systems Ltd., in particular, was a recognized leader in carrier Ethernet transport solutions. Corrigent's technology was deployed by telecommunications carriers worldwide and was widely recognized within the industry for its approach to resilient packet ring networking and Ethernet-based access and metro transport.

7. The Asserted Patents cover specific, claimed inventions that address key aspects of this technological evolution, including network interface auto-configuration for access multiplexing systems, communication protocols for bidirectional ring networks, point-to-multipoint bridged network functionality, frame concatenation with drop precedence management, and high-capacity multi-ring communication architectures. These patented inventions are now widely practiced in modern network infrastructure, including in the routers, switches, and operating software manufactured, sold, and supported by Cisco.

8. Cisco makes, uses, sells, offers to sell, imports, and supports a broad line of network infrastructure products, including the Cisco ASR 9000 Series Aggregation Services Routers and the Cisco IOS XR software that runs them; the Cisco Catalyst 9300 Series switches and the Cisco IOS XE software that runs them; the Cisco ME 3600X Series Ethernet Access Switches and ME 3800X Series Carrier Ethernet Switch Routers; and the Cisco Industrial Ethernet 4000 Series

switches. The software features of those products practice the inventions claimed in the Asserted Patents: EVPN Ethernet Tree ("E-Tree") on the ASR 9000; StackWise stacking and stack configuration synchronization on the Catalyst 9300; ATM over MPLS cell packing on the ASR 9000 equipped with the SPA Interface Processor-700 and ATM shared port adapters; and Resilient Ethernet Protocol ("REP") ring segments with VLAN load balancing on the ME 3600X, ME 3800X, and Industrial Ethernet 4000 switches. Cisco has built a substantial business selling these products and related services to telecommunications carriers, enterprises, industrial operators, and government entities throughout the United States, including throughout the State of Texas and the Eastern District of Texas.

9. Cisco infringes the Asserted Patents directly, by making, using, selling, offering to sell, and importing the accused products and by performing the claimed methods in its own laboratories and in its test, demonstration, and validation networks, and indirectly, by instructing its customers, through the configuration guides, command references, white papers, data sheets, design guides, and Cisco Live technical sessions that Cisco publishes, to build, configure, and operate the accused products in the infringing manner, and by supplying the software and hardware components especially made for that use. High IQ seeks damages for that infringement, enhanced damages for Cisco's willful infringement, and injunctive relief as to the unexpired Asserted Patents.

## THE PARTIES

10. Plaintiff High IQ Networks LLC is a Delaware limited liability company with a principal place of business at 2435 N. Central Expressway, Suite 1200, Richardson, Texas 75080.

11. On information and belief, Defendant Cisco Systems, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal executive offices

at 170 West Tasman Drive, San Jose, California 95134. Cisco's common stock is publicly traded on the NASDAQ stock market under the symbol "CSCO."

12. Cisco is registered to do business in the State of Texas under Texas Secretary of State file number 8243306 and, on information and belief, has been registered to do business and has conducted business in Texas since at least 1989. Cisco may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

13. Cisco designs, develops, manufactures, markets, sells, supports, and imports into the United States networking hardware and software, including routers, switches, and the operating software that runs them, and provides technical support, software maintenance, training, and professional services for those products. Cisco sells its products both directly and through a network of channel partners, distributors, systems integrators, and resellers, including resellers located in this District.

14. On information and belief, Cisco maintains regular and established places of business in this District, including a campus of at least seven buildings at 2250 and 2300 East President George Bush Highway, Richardson, Texas 75082, in Collin County, and a data center at 2260 Chelsea Boulevard, Allen, Texas 75013. Cisco identifies its Richardson office at "2300 East President George Bush Highway / Richardson, TX 75082" on Cisco's own web page listing Cisco office locations.[1]

15. On information and belief, Cisco's Richardson campus spans approximately 78 acres, and Cisco employs approximately 2,000 persons at its Richardson offices, including sales

[1] Cisco, *Find a Cisco office near you*, https://www.cisco.com/site/us/en/about/contact-cisco/office-locations.html (last visited Sept. 19, 2026) [hereinafter *Cisco Office Locations*].

personnel, engineers, and technical support personnel, some of whom work on or with the routers, switches, and software accused of infringement in this Complaint. On information and belief, Cisco spent nearly $80 million to convert an office building on its Richardson campus into a Tier III data center supporting the consolidation of Cisco's global network; Cisco's Allen facility is a data center of approximately 160,000 square feet; and Collin County has appraised the value of Cisco's properties in that county at more than $300 million.

## JURISDICTION AND VENUE

16. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has original and exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has personal jurisdiction over Cisco. Cisco has committed acts of patent infringement within this District and the State of Texas that give rise to this action, and Cisco has established minimum contacts with this forum such that the exercise of jurisdiction over Cisco would not offend traditional notions of fair play and substantial justice. Cisco is subject to this Court's specific personal jurisdiction pursuant to due process and the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, because Cisco does business in Texas, has committed acts of infringement in Texas, recruits and employs Texas residents, and maintains regular and established places of business in Texas, including in this District.

18. Cisco, directly and through its subsidiaries, channel partners, distributors, and resellers, makes, uses, sells, offers to sell, imports, distributes, advertises, and supports the Accused Instrumentalities (defined below) in the State of Texas and in this District. Cisco regularly conducts and solicits business in this District, engages in other persistent courses of conduct in this District, and derives substantial revenue from goods and services provided to residents of this

District, including revenue from sales of the Accused Instrumentalities. On information and belief, Cisco's authorized resellers that offer for sale and sell Cisco products, including the Accused Instrumentalities, to customers in this District include Cynergy Technology, located in Tyler, Texas and Longview, Texas.

19. Cisco has purposefully and voluntarily placed the Accused Instrumentalities into the stream of commerce with the intention and expectation that they will be purchased, deployed, and used by network operators, enterprises, industrial operators, and other customers in the State of Texas and in this District, and the Accused Instrumentalities have been and continue to be purchased, deployed, and used in this District. Cisco employs personnel in this District who sell, install, and support the Accused Instrumentalities for customers in this District, and, on information and belief, Cisco operates a Cisco Certified Internetwork Expert laboratory examination facility in Richardson, Texas, at which the routing and switching technologies of the kind accused in this Complaint are exercised.

20. Cisco has admitted or not contested personal jurisdiction in this District in prior patent litigation. *See Orckit Corp. v. Cisco Sys., Inc.*, No. 2:22-cv-276-JRG-RSP, Dkt. 26 (E.D. Tex. Oct. 28, 2022). Cisco has also availed itself of this Court as a plaintiff by filing a patent infringement action of its own in the Marshall Division of this District. *See Cisco Sys., Inc. v. Estech Sys., Inc.*, No. 2:21-cv-00266 (E.D. Tex. filed July 15, 2021). Cisco has thus sought affirmative relief as a patent plaintiff in the Marshall Division of this District, and it has litigated numerous patent cases in this District as a defendant.

21. Venue is proper in this District under 28 U.S.C. § 1400(b) because Cisco has committed acts of infringement in this District and has regular and established places of business in this District. As alleged in this Complaint, Cisco makes, uses, sells, offers to sell, and supports

the Accused Instrumentalities in this District, performs the claimed methods in this District, and induces and contributes to the infringement of its customers in this District.

22. Cisco's places of business in this District are physical places: the buildings of Cisco's campus at 2250 and 2300 East President George Bush Highway, Richardson, Texas 75082 and Cisco's facility at 2260 Chelsea Boulevard, Allen, Texas 75013. Those places are regular and established: on information and belief, Cisco has operated its Richardson campus for many years, employs approximately 2,000 persons there, has invested tens of millions of dollars in it, and holds it out on Cisco's own website as a Cisco office location.[2] Those places are the places of Cisco: on information and belief, Cisco owns or leases them, Cisco's name is on them, Cisco's employees conduct Cisco's business from them, and Cisco stores, tests, demonstrates, and supports Cisco products, including the Accused Instrumentalities, at them.

## THE ASSERTED PATENTS

23. On February 9, 2010, United States Patent No. 7,660,303 B2 (the "'303 Patent"), entitled "Point-to-Multipoint Functionality in a Bridged Network," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to inventors Ronen Solomon, Leon Bruckman, Rafi Ram, David Zelig, and Shachar Katz. The '303 Patent issued from U.S. Application No. 11/508,599, filed on August 22, 2006. The '303 Patent is in force and, with its patent term adjustment, expires on January 31, 2028. A true and correct copy of the '303 Patent is attached hereto as Exhibit 1. The '303 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282.

24. On October 5, 2010, United States Patent No. 7,808,931 B2 (the "'931 Patent"), entitled "High Capacity Ring Communication Network," was duly and legally issued by the

[2] *Cisco Office Locations*, *supra* note 1.

USPTO to inventors David Zelig, Leon Bruckman, Ronen Solomon, Gideon Agmon, and Vladimir Kleiner. The ’931 Patent issued from U.S. Application No. 11/367,231, filed on March 2, 2006. The ’931 Patent is in force and, with its patent term adjustment, expires on June 22, 2028. A true and correct copy of the ’931 Patent is attached hereto as Exhibit 2. The ’931 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282.

25. On April 13, 2010, United States Patent No. 7,697,532 B2 (the "’532 Patent"), entitled "Frame Concatenation with Drop Precedence Assignment," was duly and legally issued by the USPTO to inventors Rafi Ram and Leon Bruckman. The ’532 Patent issued from U.S. Application No. 11/704,615, filed on February 8, 2007. The ’532 Patent is in force and, with its patent term adjustment, expires on December 5, 2028. A true and correct copy of the ’532 Patent is attached hereto as Exhibit 3. The ’532 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282.

26. On October 4, 2005, United States Patent No. 6,952,397 B2 (the "’397 Patent"), entitled "Communication in a Bidirectional Ring Network with Single-Direction Receiving," was duly and legally issued by the USPTO to inventors Gal Mor, Leon Bruckman, and David Zelig. The ’397 Patent issued from U.S. Application No. 09/876,414, filed on June 7, 2001. The ’397 Patent expired on October 31, 2023, and Plaintiff seeks damages for infringement of the ’397 Patent occurring before that date. A true and correct copy of the ’397 Patent is attached hereto as Exhibit 4. The ’397 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282.

27. On August 30, 2011, United States Patent No. 8,009,684 B2 (the "’684 Patent"), entitled "High Capacity Ring Communication Network," was duly and legally issued by the USPTO to inventors David Zelig, Leon Bruckman, Ronen Solomon, Gideon Agmon, and Vladimir

Kleiner. The ’684 Patent issued from U.S. Application No. 12/897,341, filed on October 4, 2010, which is a continuation of U.S. Application No. 11/367,231, the application from which the ’931 Patent issued. The ’684 Patent expired on March 2, 2026, and Plaintiff seeks damages for infringement of the ’684 Patent occurring before that date. A true and correct copy of the ’684 Patent is attached hereto as Exhibit 5. The ’684 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282.

28. On May 4, 2004, United States Patent No. 6,731,607 B1 (the “’607 Patent”), entitled “Network Interface Auto-Configuration in an Access Multiplexing System,” was duly and legally issued by the USPTO to inventor Sharon Mantin. The ’607 Patent issued from U.S. Application No. 09/629,664, filed on August 1, 2000. The ’607 Patent expired on October 19, 2022, and Plaintiff seeks damages for infringement of the ’607 Patent occurring before that date. A true and correct copy of the ’607 Patent is attached hereto as Exhibit 6. The ’607 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282.

29. High IQ Networks LLC is the exclusive owner by assignment of all right, title, and interest in and to each of the Asserted Patents, including the right to bring this suit for injunctive relief and damages and the right to sue for and recover all past, present, and future damages for infringement of the Asserted Patents. Each of the Asserted Patents was assigned to High IQ, including all right, title, and interest in and to each of the Asserted Patents and all rights to sue for and to recover damages for past infringement.

30. Cisco does not have a license to any of the Asserted Patents, either expressly or implicitly, nor does Cisco enjoy or benefit from any rights in or to any of the Asserted Patents whatsoever.

31. Plaintiff has complied with the requirements of 35 U.S.C. § 287 with respect to the Asserted Patents to the extent required by law. High IQ and its predecessor in interest Orckit IP, LLC are patent holding entities that have not made, sold, offered for sale, or imported into the United States any product that practices any claim of the Asserted Patents, and no marking obligation under 35 U.S.C. § 287(a) has attached to either of them. No prior owner of the Asserted Patents, including Orckit Communications Ltd., Corrigent Systems Ltd., and Orckit-Corrigent Ltd., made, sold, offered for sale, or imported into the United States any product that practices any asserted claim of the Asserted Patents. In any event, the asserted claims of the ’397, ’684, and ’607 Patents are method claims, to which the marking requirement of 35 U.S.C. § 287(a) does not apply.

## THE ACCUSED INSTRUMENTALITIES

32. The terms “Accused Instrumentalities” or “Accused Products” refer to all products manufactured, used, tested, imported, sold, or offered for sale by or on behalf of Cisco that practice the Asserted Patents, and all processes employed by Cisco that practice the Asserted Patents, including without limitation the Cisco routers, switches, line cards, shared port adapters, stack cables, stacking kits, and software identified in this Complaint, together with the Cisco IOS, Cisco IOS XE, and Cisco IOS XR software images and software features that Cisco supplies with and for those products. The Accused Instrumentalities are designed for and deployed in service provider, enterprise, and industrial networks to deliver IP/MPLS routing, Ethernet switching, Layer 2 VPN services, and resilient ring-based connectivity.

33. Without the benefit of discovery or access to Cisco’s confidential technical documentation and source code, Plaintiff identifies the following claims and products. At least the following claims of the Asserted Patents are asserted against at least the following Cisco products:

| **Asserted Patent** | **Asserted Claim** | **Accused Cisco Products** |
|---|---|---|
| U.S. Patent No. 7,660,303 | At least claim 11 | Cisco ASR 9000 Series Aggregation Services Routers, including the ASR 9006, 9010, 9901, 9902, 9903, 9904, 9906, 9910, 9912, and 9922 chassis, running Cisco IOS XR Release 7.5.1 and later releases with EVPN Ethernet Tree (E-Tree), in the Per-PE configuration Cisco designates Scenario 1b and in the Per-AC configuration Cisco designates Scenario 2 (the "Accused '303 Products") |
| U.S. Patent No. 7,808,931 | At least claim 15 | Cisco Catalyst 9300 Series and Catalyst 9300X Series modular uplink switches (C9300 and C9300X models) configured as a StackWise-480 or StackWise-1T stack, together with the StackWise stack cables and stack ports used to form the stack (the "Accused '931 Products") |
| U.S. Patent No. 7,697,532 | At least claims 10 and 19 | Cisco ASR 9000 Series Aggregation Services Routers equipped with the Cisco ASR 9000 SPA Interface Processor-700 (A9K-SIP-700 and A9K-SIP-700-8G) and Cisco ATM shared port adapters (including the 1-Port and 3-Port Clear Channel OC-3 ATM SPA and the 1-Port Clear Channel OC-12 ATM SPA), running 32-bit Cisco IOS XR software, carrying Layer 2 ATM traffic over MPLS with ATM cell packing, together with the Cisco IOS XR software images containing the cell-packing and MPLS EXP imposition code (the "Accused '532 Products") |
| U.S. Patent No. 6,952,397 | At least claim 15 | Cisco ME 3600X Series Ethernet Access Switches and Cisco ME 3800X Series Carrier Ethernet Switch Routers configured in Resilient Ethernet Protocol (REP) ring segments with REP VLAN load balancing (the "Accused '397 Products") |
| U.S. Patent No. 8,009,684 | At least claim 1 | Cisco Industrial Ethernet 4000 Series switches operating in multiple Resilient Ethernet Protocol ring segments with REP VLAN load balancing, and such switches operating in High-availability Seamless Redundancy (HSR) rings joined by QuadBox nodes (the "Accused '684 Products") |

| **Asserted Patent** | **Asserted Claim** | **Accused Cisco Products** |
|---|---|---|
| U.S. Patent No. 6,731,607 | At least claim 12 | Cisco Catalyst 9300 Series and Catalyst 9300X Series switches configured as a StackWise stack and running Cisco IOS XE, using the Cisco IOS XE Stack Manager configuration synchronization and stateful switchover functions (the "Accused '607 Products") |

34. The foregoing identification of Accused Instrumentalities is based on publicly available information presently available to Plaintiff and is not intended to be, and shall not be construed as, an exhaustive or limiting identification of all Cisco products, services, systems, features, configurations, software, firmware, or combinations thereof that infringe one or more claims of the Asserted Patents. Plaintiff reserves the right to supplement, amend, or modify this identification at any time, including but not limited to: (a) adding accused products, product families, sub-models, variants, successors, or rebranded versions identified through fact discovery, expert analysis, or other investigation; (b) adding predecessor, legacy, or discontinued products for which damages may be recoverable during the applicable infringement period; (c) identifying additional infringing features, modes of operation, software releases, or configurations within the products already listed; and (d) identifying third-party products, systems, or services that incorporate, use, or operate in conjunction with the accused Cisco products in a manner that constitutes direct or indirect infringement. Nothing in this identification shall be deemed an admission that the listed products are the only infringing instrumentalities, nor shall the omission of any product be construed as an acknowledgment of non-infringement. Plaintiff will identify each accused instrumentality as specifically as possible, including by name and model number where known, in its infringement contentions served under the Local Patent Rules of this Court.

35. Cisco itself makes and uses the Accused Instrumentalities in the United States. Cisco builds, configures, and operates the accused products in the infringing configurations in its own development laboratories and in the test, demonstration, and validation networks from which Cisco's configuration guides, white papers, technical support documents, design guides, and Cisco Live presentations are written. Cisco's own documents reproduce command output taken from such networks, and Cisco's technical support documents state that "The information in this document was created from the devices in a specific lab environment."[3]

36. Cisco supplies its customers with detailed written instructions to build, configure, and operate the Accused Instrumentalities in the infringing manner. Cisco publishes on its website, cisco.com, and through its Cisco Live conference program, the configuration guides, command references, release notes, white papers, data sheets, design guides, hardware installation guides, and technical presentations cited in this Complaint, and Cisco writes those documents for the network engineers who deploy and operate its products. Cisco also delivers the Cisco IOS, IOS XE, and IOS XR software that performs the accused functions with each accused product and under its software maintenance and service contracts, and Cisco's Technical Assistance Center supports customers in deploying and operating the accused configurations. On information and belief, Cisco's customers that have deployed and operated the Accused Instrumentalities in the infringing configurations include telecommunications carriers, enterprises, industrial operators, utilities, and government entities located in the State of Texas and in this District.

---

[3] Cisco, *Verify and Troubleshoot Stackwise on Catalyst 9200 and 9300*, Prerequisites, Components Used (updated Aug. 7, 2026), https://www.cisco.com/c/en/us/support/docs/switches/catalyst-9300-series-switches/217684-verify-and-troubleshoot-stackwise-on-cat.html (last visited Sept. 19, 2026).

## CISCO'S KNOWLEDGE OF THE ASSERTED PATENTS

37. Cisco has had knowledge of the Asserted Patents, and of the inventions claimed in them, since long before the filing of this Complaint. Cisco is one of the largest holders of networking patents in the world. On information and belief, Cisco's patents are held by its wholly owned subsidiary Cisco Technology, Inc., Cisco maintains an in-house intellectual property department and outside patent counsel that prosecute hundreds of patent applications each year in the field of network switching and routing, and Cisco monitors the patents of others in that field, including the patents cited against Cisco's own applications by the USPTO.

38. **The '303 Patent.** Cisco has had actual knowledge of the '303 Patent since no later than June 7, 2012. On that date, in the prosecution of U.S. Patent Application No. 11/827,772, an application filed on July 13, 2007 naming Cisco engineer Ali Sajassi as first inventor and, on information and belief, owned by Cisco, the USPTO issued a Non-Final Rejection listing the '303 Patent on the accompanying Notice of References Cited and applying the '303 Patent against Cisco's own claims. The examiner wrote: "Claims 1, 5, 14, and 15 are rejected under 35 U.S.C. 103(a) as being unpatentable over Martini et al. (US 2006/0291445 A1; hereafter Martini) in view of Solomon et al. (US 7,660,303 B2; hereafter Solomon)." Cisco's patent counsel received that rejection and responded to it.

39. Cisco then disclosed the '303 Patent to the USPTO itself. On September 6, 2013, in the prosecution of U.S. Patent Application No. 14/019,728, an application naming Ali Sajassi as first inventor that issued as U.S. Patent No. 9,225,640, entitled "Intra-domain and inter-domain bridging over MPLS using MAC distribution via border gateway protocol," and that is assigned to Cisco Technology, Inc., Cisco's patent counsel filed an Information Disclosure Statement on Form PTO-1449 listing, at page 3 of 6, row T, "7,660,303 02/2010 Solomon et al." The transmittal accompanying that Information Disclosure Statement, signed by Cisco's outside patent counsel

and dated September 5, 2013, requested that the references listed on the PTO-1449 form, "and previously cited in U.S. Application Serial No. 11/827,772, filed July 13, 2007 by Applicants," be considered in the examination of the continuation application. Cisco thus confronted the '303 Patent as prior art applied against its own claims in 2012 and then placed the '303 Patent on its own Information Disclosure Statement in 2013.

40. Cisco's knowledge of the '303 Patent reaches the Cisco engineers responsible for the accused EVPN E-Tree feature. The subject matter of U.S. Patent No. 9,225,640, bridging over MPLS with MAC address distribution through the Border Gateway Protocol, is the technical foundation of the Ethernet VPN ("EVPN") technology accused in this Complaint. On information and belief, the Ali Sajassi named as first inventor on that application is the same Cisco engineer who served as editor of RFC 8317, "Ethernet-Tree (E-Tree) Support in Ethernet VPN (EVPN) and Provider Backbone Bridging EVPN (PBB-EVPN)," the standard with which Cisco states its accused EVPN E-Tree feature is compliant, and who is a named inventor of Cisco's U.S. Patent No. 9,742,678, "E-tree service with optimal forwarding in EVPN," which describes the root and leaf forwarding technique implemented in the Accused '303 Products.[4] In addition, at least two further Cisco patents, U.S. Patent Nos. 8,531,941 and 8,107,386, cite the '303 Patent on their face, and Cisco's U.S. Patent No. 8,307,442 cites the '303 Patent's published application, U.S. Patent Application Publication No. 2008/0049764 A1.

---

[4] A. Sajassi (Cisco), Ed., S. Salam (Cisco) et al., *RFC 8317, Ethernet-Tree (E-Tree) Support in Ethernet VPN (EVPN) and Provider Backbone Bridging EVPN (PBB-EVPN)* (Jan. 2018), https://www.rfc-editor.org/rfc/rfc8317.txt (last visited Sept. 19, 2026); U.S. Patent No. 9,742,678 B2, *E-tree service with optimal forwarding in EVPN* (Cisco Technology, Inc.; inventors Sami Boutros, Ali Sajassi, Samer Salam; filed Apr. 1, 2014; issued Aug. 22, 2017), https://patents.google.com/patent/US9742678B2/en (last visited Sept. 19, 2026).

41. **The ’397 Patent.** Cisco has had actual knowledge of the ’397 Patent since no later than July 2, 2013. On that date the USPTO issued U.S. Patent No. 8,477,638 B2, entitled “Latency enhancements for multicast traffic over spatial reuse protocol (SRP),” assigned to Cisco Technology, Inc. and filed on December 2, 2008, which lists the ’397 Patent on its face among the references cited by the examiner during its prosecution. That Cisco patent concerns dual-ring packet networks, the same field as the ’397 Patent and the accused REP ring configurations. Cisco’s awareness of the ’397 Patent’s disclosure is older still: Cisco’s U.S. Patent No. 7,212,490 B1, entitled “Dynamic load balancing for dual ring topology networks,” filed on July 6, 2001 and issued on May 1, 2007, cites the published application of the ’397 Patent, U.S. Patent Application Publication No. 2002/0186667 A1.

42. **The ’684 and ’931 Patents.** Cisco has been aware of the disclosure shared by the ’684 Patent and the ’931 Patent since no later than October 28, 2014. On that date the USPTO issued U.S. Patent No. 8,873,384 B2, entitled “Bandwidth indication in RTS/CTS frames,” assigned to Cisco Technology, Inc., which lists among the references cited by the examiner U.S. Patent Application Publication No. 2011/0069610 A1, the published application that issued as the ’684 Patent on August 30, 2011 and that shares its specification with the ’931 Patent, of which the ’684 Patent is a continuation.

43. **Notice from Plaintiff’s predecessor in interest.** On information and belief, on March 20, 2017, Orckit IP, LLC, which then owned each of the Asserted Patents, sent Cisco a notice letter concerning Orckit IP, LLC’s patents and Cisco’s infringing products, enclosing a schedule of Orckit IP, LLC’s patent portfolio, and invited Cisco to enter into discussions regarding a license to or acquisition of those patents. That letter and its enclosure are described in the First Amended Complaint in *Enhanced Data Streaming LLC v. Cisco Sys., Inc.*, No. 2:25-cv-01038-

JRG, Dkt. 22, ¶¶ 24-26 & Ex. G (E.D. Tex. Jan. 16, 2026). On information and belief, the schedule enclosed with the March 20, 2017 letter listed the Asserted Patents, each of which was then owned by Orckit IP, LLC, and Cisco declined the invitation to discuss a license. On information and belief, Cisco has therefore had actual knowledge of each of the Asserted Patents since no later than March 2017.

44. Cisco has also had knowledge of each of the Asserted Patents, and of its infringement of them, since no later than the service of this Complaint. To the extent Cisco lacked actual knowledge of any Asserted Patent before that date, Cisco subjectively believed that there was a high probability that patents covering the accused technologies existed and were held by Orckit's successors, and Cisco took deliberate actions to avoid learning of those facts, including by declining to review the patents disclosed to it, so that Cisco's ignorance was willful blindness.

**COUNT I**
**<u>INFRINGEMENT OF U.S. PATENT NO. 7,660,303</u>**

45. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

46. Claim 11 of the '303 Patent recites:

> 11. Apparatus for communication, comprising a group of switches, which are coupled together in a Layer-2 bridged network, each switch comprising:
>
> multiple network interfaces, which are configured so that at least one interface of at least one of the switches is configured as a first type of the interfaces, and a plurality of other interfaces are configured as a second type of the interfaces; and a frame processor, which is operative:
>
> to create an entry comprising a source address of the frame and a number equal to a type indication of the frame to identify the first interface, and to add the entry to a forwarding database containing an identification of at least a second interface through which the frame should be forwarded and a type designation of the destination

> address as being associated with the first or second type of the interfaces;
>
> upon receiving through a first interface of a given switch a frame comprising a given destination address, to look up the destination address in the forwarding database, and to compare the type designation with a type indication of the frame in order to determine whether to forward the frame through the second interface;
>
> upon receiving frames through the interfaces of the first and second types for transmission over the network, to label the received frames with corresponding first and second type indications, and to cause the interfaces to forward the frames through the Layer-2 bridged network responsively to the type indications, by permitting the frames that are labeled with the first type indication to be transmitted through any of the interfaces, while permitting the frames that are labeled with the second type indication to be transmitted through the interfaces of the first type and preventing the frames that are labeled with the second type indication from being transmitted through the interfaces of the second type; and
>
> to update the forwarding database using a database learning process responsively to the source address and to the type indication of the frame.

47. The Accused '303 Products are Cisco ASR 9000 Series Aggregation Services Routers, including the ASR 9006, 9010, 9901, 9902, 9903, 9904, 9906, 9910, 9912, and 9922 chassis, running Cisco IOS XR Release 7.5.1 and later releases, which contain the EVPN E-Tree Per-PE (Scenario 1b) and EVPN E-TREE Per-AC (Scenario 2) features, deployed in groups as the provider edge routers of an EVPN E-Tree network. Cisco's Release Notes for IOS XR Release 7.5.1 list EVPN E-Tree Per-PE (Scenario 1b) and EVPN E-TREE Per-AC (Scenario 2) among the software features introduced in that release and state that "Cisco IOS XR Software Release 7.5.1 is compatible with the following Cisco ASR 9000 Series Aggregation Services Router systems," listing the ASR 9922, 9912, 9910, 9906, 9904, 9903, 9902, 9901, 9010, and 9006 chassis.[5]

---

[5] Cisco, *Release Notes for Cisco ASR 9000 Series Routers, IOS XR Release 7.5.1*, Software Features Introduced and Enhanced; Software Compatibility (updated Nov. 9, 2021), https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k-r7-

48. Cisco, under 35 U.S.C. § 271(a), has directly infringed and continues to directly infringe at least claim 11 of the ’303 Patent, literally or under the doctrine of equivalents, by making, using, testing, selling, offering for sale, and importing into the United States the Accused ’303 Products. Cisco makes the accused routers, installs on them Cisco IOS XR Release 7.5.1 and later releases containing the EVPN E-Tree features, sells and offers to sell them in the United States to service providers and other network operators as the provider edge routers of EVPN networks, and imports them into the United States. Cisco also makes and uses the complete claimed apparatus: Cisco couples groups of these routers into EVPN E-Tree networks, with root and leaf attachment circuits configured, in its own laboratory, test, demonstration, and validation networks. Cisco published IOS XR command output taken from such a network, showing a bridge domain configured with “etree leaf” and a MAC route carrying the E-Tree extended community with the leaf flag set, in its Cisco Live presentation BRKSPG-2835,[6] and Cisco’s Converged SDN Transport High Level Design, a Cisco network design that places the ASR 9000 in the provider edge role, presents a fiber-to-the-home access design built on EVPN E-Tree.[7] Cisco’s customers likewise make and use the claimed apparatus when, following Cisco’s instructions, they couple the accused routers in one EVPN instance and configure root and leaf attachment circuits.

---

5/general/release/notes/b-release-notes-asr9000-r751.html (last visited Sept. 19, 2026) [hereinafter *IOS XR 7.5.1 Release Notes*].

[6] Jiri Chaloupka, Cisco, *EVPN IOS-XR Deep Dive for Service Providers and Data Center*, Cisco Live EMEA 2023, Session BRKSPG-2835, section EVPN ETREE (2023), https://www.ciscolive.com/c/dam/r/ciscolive/emea/docs/2023/pdf/BRKSPG-2835.pdf (last visited Sept. 19, 2026) [hereinafter *Cisco Live BRKSPG-2835*].

[7] Phil Bedard, Cisco, *Converged SDN Transport High Level Design v5.0*, xrdocs.io, section FTTH Design using EVPN E-Tree (July 1, 2022), https://xrdocs.io/design/blogs/latest-converged-sdn-transport-hld (last visited Sept. 19, 2026) [hereinafter *Converged SDN Transport HLD v5.0*].

49. The Accused '303 Products satisfy every limitation of claim 11 of the '303 Patent, as set forth below.

50. **A group of switches coupled together in a Layer-2 bridged network.** The Accused '303 Products are a group of switches coupled together in a Layer-2 bridged network. Cisco describes EVPN E-Tree as "a rooted-multipoint Ethernet service over MPLS core" in which "[t]he provider edge (PE) nodes can receive L2 traffic either from the attachment circuit (AC) of a bridge domain (BD) or from the remote PE node."[8] Cisco describes EVPN as "a next generation solution that provide [*sic*] Ethernet multipoint services over MPLS networks" in which "PE's [*sic*] participating in the EVPN instances learn customer MAC routes in Control-Plane using MP-BGP protocol."[9] Each accused router is a Layer-2 switch with MAC bridging capability: Cisco defines the bridge domain as "a Layer 2 broadcast domain consisting of a set of physical or virtual ports" within which "[d]ata frames are switched within a bridge domain based on the destination MAC address,"[10] states that adding an interface to a bridge domain "allows packets to be forwarded and

---

[8] Cisco, *L2VPN and Ethernet Services Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 26.1.x, 26.2.x, 26.3.x*, ch. Configure EVPN IRB, section EVPN E-Tree Per-PE (Scenario1b) (updated Sept. 11, 2026), https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/26xx/l2vpn/configuration/guide/b-l2vpn-cg-asr9000-26xx/configure-evpn-irb.html (last visited Sept. 22, 2026) [hereinafter *ASR 9000 L2VPN Guide, Configure EVPN IRB*].

[9] Cisco, *L2VPN and Ethernet Services Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 26.1.x, 26.2.x, 26.3.x*, ch. EVPN Features, section EVPN Overview (updated Sept. 11, 2026), https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/26xx/l2vpn/configuration/guide/b-l2vpn-cg-asr9000-26xx/evpn-features.html (last visited Sept. 22, 2026) [hereinafter *ASR 9000 L2VPN Guide, EVPN Features*].

[10] Cisco, *L2VPN and Ethernet Services Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 26.1.x, 26.2.x, 26.3.x*, ch. Implementing Multipoint Layer 2 Services, section Bridge Domain (updated Sept. 11, 2026), https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/26xx/l2vpn/configuration/guide/b-l2vpn-cg-asr9000-26xx/implementing-multipoint-layer-2-services.html (last visited Sept. 22, 2026) [hereinafter *ASR 9000 L2VPN Guide, Implementing Multipoint Layer 2 Services*].

received from other interfaces that are part of the same bridge domain," and states that "[t]his BD is then associated to an EVI for forwarding towards the MPLS core."[11] The EVPN instance joins the bridge domains of the several routers into one Layer-2 service; as Cisco's own design documentation explains, "E-Tree extends this paradigm by signaling between EVPN PEs which Ethernet Segments are considered root segments and which ones are considered leaf segments."[12] The '303 Patent uses "Layer-2 bridged network" to include "a virtual bridged network, such as a virtual private LAN service (VPLS) provisioned over an underlying Layer-2 or Layer-3 network," in which the node interfaces comprise virtual interfaces or a mixture of physical ports and virtual interfaces ('303 Patent at 5:56-64), and Ethernet pseudowires provisioned over MPLS tunnels form such a network (*id.* at 6:6-12). Dependent claim 15 confirms that the Layer-2 bridged network of claim 11 includes "a virtual Layer-2 network."

51. **Each switch comprising multiple network interfaces.** Each accused router comprises multiple network interfaces. Cisco's configuration example for EVPN E-Tree Per-PE (Scenario 1b) places three bundle Ethernet subinterfaces of a single router, Bundle-Ether400.1, Bundle-Ether401.1001, and Bundle-Ether4701.2001, in one bridge domain as attachment circuits, while the same router carries EVPN traffic toward the other routers of the group over its core-facing interfaces.[13] For EVPN E-TREE Per-AC (Scenario 2), Cisco states that the feature "increases the granularity of leaf designation from the entire bridge to AC bridge ports; ACs under a bridge may be root or leaf,"[14] and Cisco Live BRKSPG-2835 states that "ASR9k allows to

---

[11] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, sections Configure EVI under a Bridge Domain; EVPN Concepts.
[12] *Converged SDN Transport HLD v5.0*, *supra* note 7, section E-Tree Operation.
[13] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Configure EVPN E-Tree Per-PE (Scenario1b).
[14] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section EVPN ETREE Per-AC (Scenario 2).

combine [*sic*] Root/Leaf ACs in the same Bridge-Domain."[15] The '303 Patent describes the interfaces of each switch as physical ports and virtual interfaces ('303 Patent at 5:35-37, 5:62-64), and Cisco's attachment circuits, which are physical and bundle interfaces and their subinterfaces, are interfaces of that kind.

52. **Interfaces configured as a first type and a second type.** The interfaces of the accused routers are configured so that at least one interface of at least one of the switches is configured as a first type, root, and a plurality of other interfaces are configured as a second type, leaf. In EVPN E-Tree Per-PE (Scenario 1b), the "etree" and "leaf" commands are entered under the bridge domain ("Router(config-l2vpn-bg-bd)# etree Router(config-l2vpn-bg-bd-etree)# leaf Router(config-l2vpn-bg-bd-etree)# interface Bundle-Ether400.1"), and Cisco states that "E-Tree leaf is configured per bridge domain. If there is no leaf configuration, the bridge domain is always a root," and that "All ACs inherit E-Tree leaf designation from the bridge domain."[16] In EVPN E-TREE Per-AC (Scenario 2), the designation is applied to individual attachment circuits: "Customer sites represented by ACs can be defined as root or leaf. PE can receive traffic from both root and leaf ACs for a given EVI from a remote node. An EVI can be associated with both root(s) and leaf(s). If an AC is not configured as E-Tree leaf, it is considered as root by default."[17] Cisco's forwarding output displays the designation the router stores for each attachment circuit, for example "E-Tree = Root" in the output of the show l2vpn forwarding interface command,[18] and

[15] *Cisco Live BRKSPG-2835*, *supra* note 6, slide EVPN ETREE Summary, Scenario 2.
[16] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, sections Configure EVPN E-Tree Per-PE (Scenario1b); Scenario 1b Behavior.
[17] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section EVPN ETREE Per-AC (Scenario 2).
[18] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, output of show l2vpn forwarding interface bundle-Ether100.100 private location 0/0/CPU0.

"E-Tree: Root" in the output of the show l2vpn bridge-domain detail command.[19] Cisco states that its EVPN E-Tree feature "is compliant with RFC 8317,"[20] and RFC 8317, edited by a Cisco engineer, directs that "the operator SHOULD configure the AC with a proper role (Leaf or Root) before activating the AC."[21] The root type is the first type of interface and the leaf type is the second; these are the hub-type and spoke-type interfaces of the '303 Patent, which the network operator configures according to their function ('303 Patent at 5:37-47), typically by setting a flag in the memory of the line card on which the interface is located (*id.* at 7:60-64).

53. **A frame processor.** Each accused router comprises a frame processor: the network processors of its line cards operating under the Cisco IOS XR Layer 2 VPN forwarding software. Cisco's configuration guide refers to the MAC table of the router's "Network Processors" and displays bridge domain forwarding state per line card location through its show l2vpn forwarding commands,[22] and Cisco's technical note on IOS XR L2VPN services for the ASR 9000 states that "The MAC learning is executed in hardware by the linecards each time a frame is received in the bridge-domain."[23] That frame processor learns source addresses, maintains the bridge domain MAC table, and makes the forwarding decisions addressed below, as does the frame processor of the '303 Patent, a line card element with an ingress path and an egress path that uses the MAC forwarding database ('303 Patent at 7:3-9).

---

[19] *ASR 9000 L2VPN Guide, Implementing Multipoint Layer 2 Services*, *supra* note 10, section Verify MAC Security Recovery.
[20] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section EVPN E-Tree Per-PE (Scenario1b).
[21] *RFC 8317*, *supra* note 4, § 7.
[22] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section Verify EVPN Configuration.
[23] Cisco, *Understand IOS XR L2VPN Services and Features*, Document ID 116453, § 4.1 Local Switching (updated Jan. 13, 2025), https://www.cisco.com/c/en/us/support/docs/routers/asr-9000-series-aggregation-services-routers/116453-technote-ios-xr-l2vpn-00.html (last visited Sept. 19, 2026).

54. **Creating an entry comprising a source address of the frame.** The frame processor of each accused router is operative to create an entry comprising the source address of a received frame. Cisco describes the process step by step: "Traffic comes in on one port in the bridge domain," and "The source MAC address (AA) is learnt on DCI1 and is stored as a dynamic MAC entry."[24] Cisco's forwarding MAC table output shows such an entry keyed by the learned address, marked dynamic and listing the interface from which it was learned, with Cisco's own annotation: "0000.cccc.dddd dynamic FH0/0/0/0.2 N/A 12 Mar 13:17:36 N/A --> MAC 0000.cccc.dddd was locally learned from interface FH0/0/0/0.2."[25] Cisco's configuration guide further explains that "[w]hen a frame arrives on a bridge port (for example, pseudowire or attachment circuit) and the source MAC address is unknown to the receiving PE router, the source MAC address is associated with the pseudowire or attachment circuit."[26] Cisco's IOS XR EVPN operational data model defines the MAC database entry as comprising the MAC address ("leaf mac-address-xr") and "Port the MAC was learned on" ("leaf learned-bridge-port-name").[27] This is the entry creation of the '303 Patent, in which the node, finding no entry for the source address of a received frame, creates a new entry that includes the MAC source address of the frame and the ingress interface through which the frame was received ('303 Patent at 10:33-41).

---

[24] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section EVPN Software MAC Learning.

[25] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section Inter-AS EVPN option C.

[26] *ASR 9000 L2VPN Guide, Implementing Multipoint Layer 2 Services*, *supra* note 10, section MAC Address Source-based Learning.

[27] Cisco Systems, Inc., *Cisco-IOS-XR-evpn-oper-sub1.yang*, IOS XR 7.5.3 EVPN operational data model, YangModels GitHub repository, grouping L2VPN-EVPN-MAC (module revision Feb. 17, 2022), https://raw.githubusercontent.com/YangModels/yang/master/vendor/cisco/xr/753/Cisco-IOS-XR-evpn-oper-sub1.yang (last visited Sept. 22, 2026).

55. **A number equal to a type indication of the frame to identify the first interface.** The entry that the accused router creates carries a number equal to the type indication of the frame and identifies the interface on which the frame was received. The number is the leaf indication, one for a leaf and zero or absent for a root. Describing Scenario 1b, Cisco states that "All local MACs learned under the BD is [*sic*] advertised to BGP with etree leaf indicator."[28] Describing Scenario 2, Cisco states that "MAC advertisements originating from a leaf site are colored with a leaf-indication flag in an extended community; routes that do not have this flag are from a root site," and that a "MAC advertises local ESI and there is no leaf indicator from root."[29] Cisco's IOS XR EVPN operational data model defines, on the same MAC database entry that holds the address and the port the MAC was learned on, the boolean "local-etree-leaf," described as "Local E-Tree Leaf Indication."[30] Cisco Live BRKSPG-2835 shows IOS XR output in which a locally learned MAC address is advertised with the extended community "EVPN E-TREE:0x01:0" and explains that the "ETREE Label is set to 0, but Leaf Flag is set to 1."[31] RFC 8317, with which Cisco states its feature is compliant, defines the Leaf-Indication flag so that "A value of one indicates a Leaf AC/site."[32] Cisco's own U.S. Patent No. 9,742,678 claims "storing, on the ingress PE device, the new MAC addresses in a table with an indication in the table whether each MAC address was learned over a root or leaf ingress Ethernet segment, respectively."[33] The '303 Patent defines the type indication of a frame as the indication given to the frame in accordance with the type of the

---

[28] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 1b Behavior.
[29] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For unicast traffic.
[30] *Cisco-IOS-XR-evpn-oper-sub1.yang*, *supra* note 27, grouping L2VPN-EVPN-MAC.
[31] *Cisco Live BRKSPG-2835*, *supra* note 6, slide EVPN ETREE Leaf Label (Scenario 1b) - Unicast.
[32] *RFC 8317*, *supra* note 4, § 6.1.
[33] *U.S. Patent No. 9,742,678*, *supra* note 4, claim 1.

interface on which it was received ('303 Patent at 8:20-30), and states that when a new entry is created, the type indication assigned to the frame becomes the type designation of the entry (*id.* at 10:41-43; 3:65-4:2). A MAC address learned from a frame received on a leaf attachment circuit is entered with the leaf indication, and one learned on a root attachment circuit is entered without it, so the number held on the entry equals the type of the frame from which the address was learned.

56. **Adding the entry to a forwarding database that identifies a second interface.** The accused router adds the learned entry to a forwarding database that contains an identification of the interface through which frames for a given destination should be forwarded. Cisco states that "Locally learnt MAC routes can be viewed by forwarding table show l2vpn forwarding bridge-domain mac-address location 0/0/cpu0,"[34] and that "In EVPN enabled PEs, PEs import the MAC route along with the label to their respective EVPN forwarding table only if their route targets (RTs) match."[35] Cisco's MAC table output lists, for a locally learned address, the attachment circuit on which it was learned ("2001 0000.2001.5555 20.1.5.55 TenGigE0/0/0/2/0.2001 34203 <-- local MAC") and, for a remote address, the next hop and MPLS label of the router that advertised it ("2001 00a9.2002.0001 :: 10.10.10.10 34226 <-- Remote MAC").[36] Cisco's U.S. Patent No. 9,742,678 describes the same structure: "a simplified table 400 (e.g., forwarding table, a data structure 245) that may store MAC addresses 405, corresponding forwarding information 410, and the newly introduced root/leaf indication."[37] The bridge domain MAC table is the forwarding database of claim 11, which the '303 Patent describes as the MAC forwarding database

---

[34] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section Verify EVPN Configuration.
[35] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section Migrate VPLS Network to EVPN Network through Seamless Integration.
[36] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section Verify EVPN Native with Software MAC Learning.
[37] *U.S. Patent No. 9,742,678*, *supra* note 4, discussion of FIG. 4.

used for MAC learning and forwarding, a table that identifies for each unicast destination address the interface through which the frame should be forwarded, with interface numbers that refer to physical or virtual ports ('303 Patent at 7:5-9, 7:31-37). A local attachment circuit is a port of the switch, and the labeled path toward a remote router is a core-facing virtual interface of the switch.

57. **A type designation of the destination address.** The forwarding database of each accused router contains, for each destination address, a type designation of that address as being associated with a root or a leaf. Cisco states in terms that the "PE indicates if the MAC address is associated with a root or a leaf," and that "Remote PEs perform ingress filtering, when MAC is programmed and the leaf-indication is present, a cross-check is performed with the originating AC; if the AC is also a leaf, packets will not be forwarded."[38] Cisco's per-MAC detail output displays, for a single MAC entry, the fields "Local E-Tree : Root Remote E-Tree : Root Remote matching E-Tree RT : No."[39] Cisco's IOS XR EVPN operational data model defines on the MAC database entry the booleans "local-etree-leaf" ("Local E-Tree Leaf Indication") and "remote-etree-leaf" ("Remote E-Tree Leaf Indication").[40] RFC 8317 explains that "on the ingress PE, the MAC destination address lookup yields (in addition to the forwarding adjacency) a flag that indicates whether or not the target MAC is associated with a Leaf site,"[41] and Cisco's U.S. Patent No. 9,742,678 states that "when a PE receives a MAC advertisement route, it installs the 'Root/Leaf' indication on a per MAC address basis in its forwarding table. This may be a single-bit flag

[38] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For unicast traffic.
[39] Cisco, *VPN and Ethernet Services Command Reference for Cisco ASR 9000 Series Routers*, ch. EVPN Commands, entry show evpn evi, sample output of show evpn evi mac detail (updated Sept. 5, 2025), https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/lxvpn/command/reference/b-lxvpn-cr-asr9000/EVPN-commands.html (last visited Sept. 19, 2026).
[40] *Cisco-IOS-XR-evpn-oper-sub1.yang*, *supra* note 27, grouping L2VPN-EVPN-MAC.
[41] *RFC 8317*, *supra* note 4, § 4.1.

associated with every MAC address table entry."[42] The '303 Patent describes this designation as indicating, for each MAC address, whether the interface through which the MAC address will ultimately be reached at the network edge is hub-type or spoke-type, a designation that often refers to the type of an interface on some other node in the network ('303 Patent at 7:51-60), which the processor learns in the course of the MAC learning process and fills into the forwarding database along with the interface numbers (*id.* at 7:64-67).

58. **Looking up the destination address upon receiving a frame through a first interface.** Upon receiving a frame bearing a given destination address on an attachment circuit, the accused router looks that address up in its bridge domain MAC table. Cisco states that "For Unicast traffic, the MAC lookup in the bridge forwards the traffic to the right AC,"[43] and that "If PE is aware of the destination MAC address, the PE uses unicast label for forwarding traffic, and if PE is not aware of the destination MAC route, multicast label is used for forwarding traffic."[44] Cisco's description of Scenario 1b presupposes that lookup: "When you configure E-Tree with Scenario 1b, for known unicast traffic, MAC advertisements originating from a leaf site is [*sic*] identified with an etree leaf label to classify that the source is a leaf. Ingress filtering is performed, and traffic originating at leaf AC destined for a remote leaf MAC is dropped. If the remote PE is also a leaf, the ingress traffic from the source leaf is dropped. If the remote PE is a root, the ingress traffic from the source leaf is forwarded."[45] Cisco's own patent describes the step as "Perform a

---

[42] *U.S. Patent No. 9,742,678*, *supra* note 4, discussion of FIG. 4.
[43] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section AC-based Virtual Ethernet Segment, Local Switching.
[44] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section Inter-AS EVPN Option B, Verification.
[45] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 1b.

MAC address table lookup on the destination address to determine whether the destination corresponds to a Root or Leaf."[46]

59. **Comparing the type designation with a type indication of the frame.** The accused router compares the type designation stored for the destination address with the type indication of the received frame in order to determine whether to forward the frame through the second interface. Cisco describes the comparison in its own words: "when MAC is programmed and the leaf-indication is present, a cross-check is performed with the originating AC; if the AC is also a leaf, packets will not be forwarded."[47] The first operand is the leaf indication programmed with the destination MAC address; the second is the leaf or root status of the attachment circuit on which the frame arrived, which is the type indication of that frame. Cisco Live BRKSPG-2835 states that "Unicast traffic is filtered by ingress node" and that "If traffic is originated from Leaf AC and destination is local/remote Leaf AC frame is dropped."[48] RFC 8317 describes the same two operands: "The ingress PE cross-checks this flag with the status of the originating AC, and if both are Leafs, then the packet is not forwarded."[49] Cisco's U.S. Patent No. 9,742,678 states that "[t]he ingress PE can then decide whether to drop or forward the frame based on the combination of the MAC lookup and the Root/Leaf designation of the incoming interface, according to the rules of E-TREE forwarding."[50] Claim 11 recites "a type indication of the frame"; it does not recite a field of the frame header. The '303 Patent defines the type indication of a frame as the indication given to the frame in accordance with the type of the interface on which it was received, states that

---

[46] *U.S. Patent No. 9,742,678*, *supra* note 4, discussion of FIG. 4.
[47] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For unicast traffic.
[48] *Cisco Live BRKSPG-2835*, *supra* note 6, slide EVPN ETREE Leaf Label (Scenario 1b) - Unicast.
[49] *RFC 8317*, *supra* note 4, § 4.1.
[50] *U.S. Patent No. 9,742,678*, *supra* note 4, discussion of FIG. 4.

"[a]ny suitable type indication may be used to mark the frame at step 72, as long as the other nodes in network 20 are programmed to recognize the indication," and describes the indication being conveyed inside the node from the ingress line card to the egress line card ('303 Patent at 8:20-33, 9:31-36). The accused router determines, for every frame it receives on an attachment circuit, whether that attachment circuit is a leaf or a root, and applies that determination to the frame when it decides whether to forward it.

60. **Labeling received frames with corresponding first and second type indications.** Upon receiving frames through root and leaf attachment circuits for transmission over the network, the accused router labels them with corresponding first and second type indications. Cisco states that "The ingress PE tags MPLS frames with the etree leaf label for traffic originating from a leaf site; this label allows the disposition PE to perform egress filtering to [*sic*] native EVPN ESI label filtering," that "BUM traffic originating from single-homed leaf AC is tagged with destination etree leaf label," and that "BUM traffic originating from single-homed root AC is not tagged with any ESI or etree leaf label."[51] Describing Scenario 1b, Cisco states that "leaf nodes transmit an etree leaf label to identify that leaf sites are connected to the PE. Then, at the ingress node, BUM traffic originating from a leaf node is tagged with the corresponding remote etree leaf label."[52] The other routers of the group are programmed to recognize the indication, because "A PE with leaf sites allocate [*sic*] a leaf label, and communicate this label to remote PEs using an ES/EAD route with ESI 0 with the ETREE extended community."[53] Cisco Live BRKSPG-2835

---

[51] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For BUM traffic.
[52] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 1b.
[53] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For BUM traffic.

states that "Leaf to Leaf BUM traffic has ETREE Label."[54] RFC 8317 states the requirement in the terms of the claim: "the MPLS-encapsulated frames MUST be tagged with an indication of when they originated from a Leaf AC," and "[t]he mechanism by which the PE identifies whether a given frame originated from a Root or a Leaf site on the segment is based on the AC identifier for that segment."[55] For known-unicast frames, the accused router likewise treats each received frame as a leaf frame or a root frame according to the attachment circuit on which it arrived, and advertises the addresses learned from leaf frames with the leaf-indication flag set. The etree leaf label is the second type indication, and a label stack without it is the first. The '303 Patent gives as examples of a type indication the CFI bit of the IEEE 802.1Q VLAN tag and, for virtual Ethernet connections over MPLS tunnels, one of the bits of the inner pseudowire label ('303 Patent at 8:33-41); an MPLS label that is present for one type of frame and absent for the other is an indication of exactly that kind.

61. **Forwarding the frames responsively to the type indications.** The accused routers cause their interfaces to forward frames through the Layer-2 bridged network responsively to those type indications. For known unicast, the ingress router performs ingress filtering: "Remote PE performs ingress filtering to prevent traffic from being sent unnecessarily over the core to be filtered at egress PE."[56] For broadcast, unknown unicast, and multicast frames, the disposition router performs egress filtering on the etree leaf label: "The PE performs egress filtering for BUM traffic. BUM traffic originating from leaf sites is filtered at egress nodes if the destination is also

---

[54] *Cisco Live BRKSPG-2835*, *supra* note 6, slide EVPN ETREE Leaf Label (Scenario 1b) - BUM.
[55] *RFC 8317*, *supra* note 4, § 4.2.
[56] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For unicast traffic.

a leaf."[57] Cisco Live BRKSPG-2835 states the rule for the ASR 9000 in a single line: "If Traffic with ETREE label is received [*sic*] cannot be forwarded to Leaf AC."[58] RFC 8317 states the same egress rule: "When a PE receives this special Leaf label in the data path, it blocks the packet if the destination AC is of type Leaf; otherwise, it forwards the packet."[59] Each of these is a forwarding decision that the frame processor makes in response to the type indication of the frame, as in the forwarding process of the '303 Patent, which determines the type indication of the frame, forwards a hub-type frame without restriction, and forwards a spoke-type frame only toward hub-type destinations ('303 Patent at 9:39-10:2).

62. **Permitting first-type frames to be transmitted through any of the interfaces.** Frames labeled with the first type indication, those originating from root attachment circuits, are permitted to be transmitted through any of the interfaces. Cisco states that "For a given BD, L2 communication can only happen from root to leaf and leaf to root, and root to root,"[60] and that "BUM traffic originating from single-homed root AC is not tagged with any ESI or etree leaf label,"[61] so no leaf indication accompanies a root frame to restrict where it may be delivered. Cisco Live BRKSPG-2835 states that "BUM between Root <-> Leaf is allowed,"[62] and Cisco's Converged SDN Transport design states that "traffic is allowed between root/leaf and root/root

---

[57] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For BUM traffic.
[58] *Cisco Live BRKSPG-2835*, *supra* note 6, slide EVPN ETREE Leaf Label (Scenario 1b) - BUM.
[59] *RFC 8317*, *supra* note 4, § 4.2.1.
[60] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section EVPN E-Tree Per-PE (Scenario1b).
[61] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For BUM traffic.
[62] *Cisco Live BRKSPG-2835*, *supra* note 6, slide EVPN ETREE Leaf Label (Scenario 1b) - BUM.

interfaces but not between leaf interfaces either on the same node or on different nodes."[63] On the known-unicast path the cross-check withholds a frame only where the originating attachment circuit is a leaf, so a root frame is forwarded whether its destination is a root or a leaf. RFC 8317 confirms that "Root sites can communicate with all other customer sites (both Root and Leaf sites)."[64] This is the hub-type forwarding of the '303 Patent, in which a hub-type frame is looked up and forwarded to all destination interfaces indicated by the database ('303 Patent at 9:42-48).

63. **Permitting second-type frames through first-type interfaces and preventing them through second-type interfaces.** Frames labeled with the second type indication, those originating from leaf attachment circuits, are forwarded to root interfaces and are prevented from reaching leaf interfaces. Cisco states that "L2 communication between the ACs of two or more leafs is not allowed";[65] that "traffic originating at leaf AC destined for a remote leaf MAC is dropped" while "[i]f the remote PE is a root, the ingress traffic from the source leaf is forwarded";[66] that "At the egress PE, traffic is tagged with the matching etree leaf label that is dropped at leaf ACs";[67] that "Intra-PE forwarding between leaf sites is prevented by putting all leaf ACs under a given bridge domain in a single split-horizon group";[68] and that in Scenario 1b the "Split-horizon group between ACs of a leaf is enabled automatically."[69] Cisco Live BRKSPG-2835 states that "ETREE Label prevents forwarding between Leaves [*sic*] ACs" and that "ASR9k/NCS add Leaf

---

[63] *Converged SDN Transport HLD v5.0*, *supra* note 7, section E-Tree Operation.
[64] *RFC 8317*, *supra* note 4, § 1.
[65] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section EVPN E-Tree Per-PE (Scenario1b).
[66] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 1b.
[67] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 1b.
[68] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For BUM traffic.
[69] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 1b Behavior.

ACs to SHG2 automatically => Prevents local Leaf to Leaf AC forwarding."[70] RFC 8317 states the same rules, including that "the PE needs to place all its Leaf ACs for a given bridge domain in a single split-horizon group in order to prevent intra-PE forwarding among its Leaf ACs."[71] This is the spoke-type forwarding of the '303 Patent, in which spoke-type frames are forwarded where the destination's type designation is hub-type and discarded where it is spoke-type ('303 Patent at 9:49-10:2).

64. **Updating the forwarding database using a database learning process responsive to the source address and the type indication.** The accused routers update the forwarding database through a learning process that responds both to the source address and to the type indication of the received frame. Cisco describes the steps: "Traffic comes in on one port in the bridge domain"; "The source MAC address (AA) is learnt on DCI1 and is stored as a dynamic MAC entry"; "The MAC address (AA) is converted into a type-2 BGP route and is sent over BGP to all the remote PEs in the same EVI"; and "The MAC address (AA) is updated on DCI3 as a static remote MAC address."[72] With EVPN E-Tree configured, that process is responsive to the type indication of the frame as well as to its source address: "All local MACs learned under the BD is [*sic*] advertised to BGP with etree leaf indicator";[73] "MAC advertisements originating from a leaf site are colored with a leaf-indication flag in an extended community; routes that do not have this flag are from a root site"; and the remote routers program the address with that indication.[74] Cisco's IOS XR EVPN operational data model shows where the process writes its result: the MAC

---

[70] *Cisco Live BRKSPG-2835*, *supra* note 6, slides EVPN ETREE Leaf Label (Scenario 1b).
[71] *RFC 8317*, *supra* note 4, § 4.2.
[72] *ASR 9000 L2VPN Guide, EVPN Features*, *supra* note 9, section EVPN Software MAC Learning.
[73] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 1b Behavior.
[74] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8, section Scenario 2 Behavior, For unicast traffic.

database entry carries the booleans "local-etree-leaf" and "remote-etree-leaf."[75] Cisco's U.S. Patent No. 9,742,678 describes the same learning step: "when an EVPN PE learns a new MAC address locally over an attached Ethernet Segment, it indicates in the MAC Advertisement route whether the address was learned over a Root or Leaf segment."[76] This is the learning process of the '303 Patent, in which the node looks up the source address, creates a new entry where none exists, sets the type designation of that entry from the type indication of the frame, and updates the entry when a later frame shows a new interface or a new type ('303 Patent at 10:33-67), and in which an egress line card uses MAC learning to fill in its own forwarding database from an indication of the interface through which the frame was received (*id.* at 9:34-36).

65. To the extent any limitation of claim 11 of the '303 Patent is found not to be literally present in the Accused '303 Products, that limitation is present under the doctrine of equivalents, because the corresponding feature of the Accused '303 Products performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation, and differs from it, if at all, only insubstantially from the perspective of a person of ordinary skill in the art. By way of example, the etree leaf label and the ingress leaf or root status that the accused router applies to each received frame perform substantially the same function as the claimed labeling, marking each received frame with the type of the interface through which it was received; in substantially the same way, as a binary indication set at ingress from the configured type of the receiving interface that accompanies the frame to the forwarding decision; to achieve substantially the same result, that every frame is recognized at the forwarding decision as a first type frame or a second type frame.

[75] *Cisco-IOS-XR-evpn-oper-sub1.yang*, *supra* note 27, grouping L2VPN-EVPN-MAC.
[76] *U.S. Patent No. 9,742,678*, *supra* note 4, paragraph introducing FIG. 4.

66. Cisco, under 35 U.S.C. § 271(b), has induced and continues to induce third parties, including telecommunications carriers, enterprise customers, and network operators in this District and throughout the United States, to directly infringe at least claim 11 of the ’303 Patent by making and using the claimed apparatus. A network operator makes and uses the claimed apparatus when it couples accused routers in one EVPN instance and configures root and leaf attachment circuits, and Cisco instructs its customers to do exactly that. Cisco’s L2VPN and Ethernet Services Configuration Guide for the ASR 9000 gives the command sequence for EVPN E-Tree Per-PE (Scenario 1b), describes the forwarding behavior of Scenario 1b and Scenario 2, and tells customers that Scenario 2 interoperates with Scenario 1b;[77] Cisco’s Release Notes for IOS XR Release 7.5.1 announce both features to customers;[78] Cisco’s Cisco Live presentation BRKSPG-2835 teaches the E-Tree leaf label mechanism and its configuration;[79] and Cisco’s Converged SDN Transport High Level Design presents a validated access network design built on EVPN E-Tree with the ASR 9000 as the provider edge.[80] Cisco has known of the ’303 Patent since at least June 7, 2012 and September 6, 2013, as alleged above, and since no later than March 2017 and the service of this Complaint, and has known or been willfully blind to the fact that the acts it instructs constitute infringement. With that knowledge Cisco has continued to publish those instructions, to sell the accused routers and software for that use, and to support customers in deploying EVPN E-Tree, with the specific intent that its customers make and use the claimed apparatus.

67. Cisco, under 35 U.S.C. § 271(c), has contributorily infringed and continues to contributorily infringe at least claim 11 of the ’303 Patent. With knowledge of the ’303 Patent,

---

[77] *ASR 9000 L2VPN Guide, Configure EVPN IRB*, *supra* note 8.
[78] *IOS XR 7.5.1 Release Notes*, *supra* note 5.
[79] *Cisco Live BRKSPG-2835*, *supra* note 6.
[80] *Converged SDN Transport HLD v5.0*, *supra* note 7.

Cisco has sold, offered for sale, and imported into the United States the Accused ’303 Products and the Cisco IOS XR software containing the EVPN E-Tree Per-PE (Scenario 1b) and EVPN E-TREE Per-AC (Scenario 2) features, which constitute a material part of the claimed apparatus, are especially made and especially adapted for building a rooted-multipoint Layer-2 network of root and leaf attachment circuits in which frames are labeled and forwarded according to their root or leaf origin, and are not staple articles or commodities of commerce suitable for substantial noninfringing use. The E-Tree leaf-label software has no use other than to implement the root and leaf forwarding rules described above, and Cisco’s customers directly infringe when they use it as Cisco intends.

68. On information and belief, Cisco’s customers directly infringe claim 11 of the ’303 Patent when they deploy the Accused ’303 Products as Cisco instructs to build and operate EVPN E-Tree networks in the United States, including in this District.

69. Alternatively, Cisco has known that there is a high probability that the making, use, sale, offer for sale, and importation of the Accused ’303 Products constitute infringement of the ’303 Patent, and has taken deliberate actions to avoid learning of those facts.

70. Cisco’s infringement of the ’303 Patent has been and is willful. Cisco had actual knowledge of the ’303 Patent from the USPTO’s June 7, 2012 rejection of Cisco’s own claims over the ’303 Patent and from Cisco’s own September 6, 2013 Information Disclosure Statement listing the ’303 Patent, both in the prosecution of Cisco applications directed to bridging over MPLS with BGP-based MAC distribution, the technology on which the accused EVPN E-Tree feature is built, and both naming as first inventor the Cisco engineer who edited the E-Tree standard with which Cisco states the accused feature complies. With that knowledge, Cisco introduced the EVPN E-Tree Per-PE and Per-AC features in IOS XR Release 7.5.1 in November

2021 and has sold, supported, and promoted them since, without seeking a license from Plaintiff or its predecessors. Cisco's infringement has been deliberate, in reckless disregard of Plaintiff's patent rights, and egregious, and merits enhanced damages under 35 U.S.C. § 284.

71. Cisco's acts of direct, induced, and contributory infringement of the '303 Patent have occurred and continue to occur in the United States, including in this District, and have injured and continue to injure Plaintiff. Plaintiff has suffered and continues to suffer damages as a result of Cisco's infringement of the '303 Patent, and Cisco is liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for that infringement, but in no event less than a reasonable royalty, together with interest and costs. Cisco's continuing infringement of the '303 Patent has irreparably harmed and will continue to irreparably harm Plaintiff unless enjoined by this Court.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 7,808,931**

72. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

73. Claim 15 of the '931 Patent recites:

> 15. A communication network, comprising:
>
> at least three communication rings in a concentric layout, each comprising two unidirectional ringlets oriented in mutually-opposite directions; and
>
> a plurality of ring nodes connected by the rings, wherein at least two ring nodes are each connected to at least three of the communication rings, and wherein each ring node is arranged to accept a data packet comprising one or more header fields, to determine an egress ring node to which the data packet is to be forwarded, to identify a subset of the rings comprising one or more common rings that are connected to both the ring node and the egress ring node, to select, responsively to a respective value of at least one of the header fields of the packet, a ringlet of a ring among the one or more common

> rings, and to forward the data packet to the egress ring node over the selected ringlet.

74. The Accused ’931 Products are stacks of two to eight Cisco Catalyst 9300 Series and Catalyst 9300X Series modular uplink switches (C9300 and C9300X models) cabled together through their StackWise-480 or StackWise-1T stack ports with Cisco StackWise stack cables. Cisco’s data sheet states that “Cisco Catalyst 9300 Series modular uplink models (C9300 SKUs) support a high-speed back-panel stacking bandwidth solution (480 Gbps) with StackWise-480. Up to eight switches can be configured in a StackWise-480 with the special connector at the back of the switch, using dedicated stack cables,” and that “Cisco Catalyst 9300 Series modular uplink models (C9300X SKUs) support the industry’s highest back-panel stacking bandwidth solution (1 Tbps) with StackWise-1T. Up to eight switches can be configured in a StackWise-1T with the special connector at the back of the switch, using dedicated stack cables.”[81] Cisco’s hardware installation guide states that “StackWise ports are used to connect switches in StackWise stacking configurations. The switch ships with a 0.5-meter StackWise cable for modular uplink switch models that you can use to connect the StackWise ports.”[82]

75. Cisco, under 35 U.S.C. § 271(a), has directly infringed and continues to directly infringe at least claim 15 of the ’931 Patent, literally or under the doctrine of equivalents, by making, using, testing, selling, offering for sale, and importing into the United States the Accused ’931 Products. Cisco makes and uses the claimed network in the United States each time it cables

---

[81] Cisco, *Cisco Catalyst 9300 Series Switches Data Sheet*, Resiliency and high availability (updated Sept. 1, 2026), https://www.cisco.com/c/en/us/products/collateral/switches/catalyst-9300-series-switches/nb-06-cat9300-ser-data-sheet-cte-en.html (last visited Sept. 19, 2026) [hereinafter *Catalyst 9300 Data Sheet*].
[82] Cisco, *Cisco Catalyst 9300 Series Switches Hardware Installation Guide*, ch. Product Overview, StackWise Ports, https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/hardware/install/b_c9300_hig/Product-overview.html (last visited Sept. 19, 2026).

two or more Catalyst 9300 or 9300X switches into a stack ring and runs the stack in its development, test, demonstration, and validation laboratories. Cisco's own documents are the product of that conduct: Cisco's support document Verify and Troubleshoot Stackwise on Catalyst 9200 and 9300 reproduces command output from a three-member Catalyst 9300 stack and states that "The information in this document was created from the devices in a specific lab environment,"[83] and Cisco's Catalyst 9300 Stackwise System Architecture White Paper reproduces command output from a four-member stack named "9300-STACK."[84] Cisco also sells, offers to sell, and imports into the United States the Catalyst 9300 and 9300X switches and the STACK-T1 stack cables, in stacking configurations of up to eight members, and Cisco's customers make and use the claimed network when they cable those switches into a stack ring and operate it.

76. The Accused '931 Products satisfy every limitation of claim 15 of the '931 Patent, as set forth below.

77. **A communication network.** A stack of Catalyst 9300 or 9300X modular uplink switches joined by StackWise-480 or StackWise-1T stack cables is a communication network. Cisco states that "Stacking in the Cisco Catalyst 9300 Series is enabled using a stack-ring fabric known as StackWise-1T/480/320,"[85] that "Up to a maximum of eight switches can be stacked

---

[83] *Verify and Troubleshoot Stackwise*, *supra* note 3, Prerequisites, Components Used.

[84] Cisco, *Catalyst 9300 Stackwise System Architecture White Paper*, Stack logs (updated Nov. 1, 2023), https://www.cisco.com/c/en/us/products/collateral/switches/catalyst-9300-series-switches/white-paper-c11-741468.html (last visited Sept. 19, 2026) [hereinafter *Catalyst 9300 StackWise White Paper*].

[85] Cisco, *Cisco Catalyst 9300 Series Switches Architecture White Paper*, StackWise-1T/480/320 Architecture (updated Mar. 1, 2023), https://www.cisco.com/c/en/us/products/collateral/switches/catalyst-9300-series-switches/nb-06-cat9300-architecture-cte-en.html (last visited Sept. 19, 2026) [hereinafter *Catalyst 9300 Architecture White Paper*].

together physically in a ring topology to form a single, unified, virtual stack system,"[86] and that the member switches forward data packets to one another across the stack rings.

78. **At least three communication rings in a concentric layout.** The StackWise-480 and StackWise-1T fabric comprises at least three communication rings in a concentric layout. Cisco states that "The high-speed backplane of the Cisco Catalyst 9300 Series stack-ring fabric is constructed by daisy-chaining the stack-member switches with Cisco proprietary cables that connect rear-side stack ports. The Cisco stack fabric consists of six unidirectional data transmission rings," and that "Each stack connector bundles multiple individual cables that carry data across the stack ring. The cabling structure creates six/four internal stack rings for modular/fixed uplink models, respectively."[87] Cisco states that "The fabric consists of six counter-rotating rings (40 Gbps per ring) for modular uplink C9300 models, six counter-rotating rings (90 Gbps per ring) for modular uplink C9300X models, and four counter-rotating rings (40 Gbps per ring) for fixed uplink C9300L models, and the system's throughput is a function of the aggregated throughput of these rings (540/240/160 Gbps)."[88] Cisco's troubleshooting documentation gives the division between the two directions: "Each stack cable has six rac rings (ring access control), three outgoing/three incoming at 40Gig each," and "The stack-ring operates in both a clockwise and counter-clockwise direction. Traffic on the ring can take either path regardless of its destination."[89] The '931 Patent uses "ring" and "ringlet" as IEEE 802.17 uses them: "Each ring 28 comprises two unidirectional ringlets oriented in mutually-opposite directions" ('931 Patent at 5:14-16), and

---

[86] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Introduction to StackWise.
[87] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Ring architecture.
[88] *Catalyst 9300 Architecture White Paper*, *supra* note 85, StackWise-1T/480/320 Architecture.
[89] Cisco, *Troubleshoot Silent Reloads on Catalyst 9300/3850/3650s*, SifInfo; Stack Member Timeouts/Reloads, Case Study, Symptoms (updated June 27, 2024), https://www.cisco.com/c/en/us/support/docs/switches/catalyst-9300-series-switches/222078-troubleshoot-silent-reloads-on-catalyst.html (last visited Sept. 19, 2026).

during prosecution the applicant confirmed that the application "utilizes the terms 'ring' and 'ringlet' in accordance with the IEEE specification," under which "Each ringlet is made up of links with data flow in the same direction." In the vocabulary of the '931 Patent, each of Cisco's six unidirectional rings is a ringlet, and each clockwise ringlet paired with a counter-clockwise ringlet through the same members is a ring; the six unidirectional rings are therefore three communication rings. Cisco's own description confirms the pairing: Cisco calls the six rings "counter-rotating," the term IEEE 802.17 uses for the two oppositely directed ringlets that together form a ring. Those three rings are in a concentric layout: all six unidirectional rings pass through the same two stack ports of the same stack members in the same order, side by side in the same stack cables, around one closed loop with a common center, which is the layout of Figure 1 of the '931 Patent, whose "parallel communication rings" may be multiplexed onto a single physical medium ('931 Patent at 1:52-55, 5:23-26).

79. **Each ring comprising two unidirectional ringlets oriented in mutually-opposite directions.** Each of the three rings comprises two unidirectional ringlets oriented in mutually opposite directions. Cisco states that all six stack rings are "unidirectional" and "counter-rotating"; that at every stack cable and every UADP ASIC three are outgoing and three incoming ("six links per asic, three outgoing, three incoming. For example, odd numbers are outgoing and even numbers are incoming or vice versa"); and that the stack ring "operates in both a clockwise and counter-clockwise direction."[90] Three of the six unidirectional rings therefore carry data clockwise around the stack and three carry data counter-clockwise, and each ring of the fabric, formed of one clockwise and one counter-clockwise ringlet through the same members, is a ring of two oppositely directed ringlets. Cisco's failure behavior confirms the pairing: when a single

[90] *Troubleshoot Silent Reloads*, *supra* note 89, SifInfo; Stack Member Timeouts/Reloads.

stack port is lost, "3 of 6 should wrap," in the groups "0, 2 and 4 or 1, 3 and 5," that is, one ringlet of each of the three rings, each turning its traffic back onto an oppositely directed ringlet, with all three rings wrapping together because they share the failed stack port and cable,[91] which is the wrap protection the '931 Patent describes: "The last ring node before the faulty segment reverses the direction of the packet and sends it around over the opposite direction ringlet" ('931 Patent at 10:38-40).

80. **A plurality of ring nodes connected by the rings.** The stack member switches are a plurality of ring nodes connected by the rings. Cisco states that the stack-ring fabric is "constructed by daisy-chaining the stack-member switches with Cisco proprietary cables that connect rear-side stack ports,"[92] that "The stack ring provides interconnectivity between the active/standby switches and the member switches,"[93] and that each member attaches to the rings through its UADP ASIC, to which Cisco assigns a node identifier that is "unique across all asics in the stack."[94] Cisco's configuration guide sets the maximum stack size by counting the ASICs on the stack ring: "A high speed stack can support a maximum of 16 ASICs. The maximum switches on a stack in the high speed mode depend on the sum of total number of ASICs on the stack ring."[95] A stack has at least two members and as many as eight, and the six unidirectional rings passing through every member's two stack ports are what connect them.

---

[91] *Troubleshoot Silent Reloads*, *supra* note 89, SifInfo register output, wrappedAtRac annotations.
[92] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Ring architecture.
[93] *Verify and Troubleshoot Stackwise*, *supra* note 3, Stackwise Operation.
[94] *Troubleshoot Silent Reloads*, *supra* note 89, SifInfo register output, nodeId annotation.
[95] Cisco, *Stacking and High Availability Configuration Guide, Cisco IOS XE 17.15.x (Catalyst 9300 Switches)*, ch. Configuring High Speed Stacking, Restrictions for High Speed Stacking, https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-15/configuration_guide/stck_mgr_ha/b_1715_stck_mgr_ha_9300_cg/configuring_high_speed_stacking.html (last visited Sept. 19, 2026).

81. **At least two ring nodes each connected to at least three of the communication rings.** At least two ring nodes, and indeed every member of a stack, are each connected to all three communication rings. Cisco states that "Each Cisco Catalyst 9300 switch with modular uplinks comes with two stack ports located on the back panel of the switch to support the StackWise-1T/480 architecture,"[96] that each stack cable carries all six rings,[97] that "Internally this stack interface consists of six rings, each capable of 40/90 Gbps, providing a cumulative bandwidth of 240 Gbps respectively (120Gbps full-duplex) on UADP 2.0/2.0XL,"[98] and that each ASIC has six ring access controllers, one per unidirectional ring, whose status and control registers report and enable insert, copy, strip, and transmit functions on each ring.[99] Cisco documents stacks of "up to eight stacking-capable switches connected through their StackWise ports."[100] The '931 Patent treats a node as "connected" to a ring when it performs packet processing on the packets carried by the ring, and not merely by a physical connection ('931 Patent at 5:43-46), and each stack member inserts packets onto, copies and strips packets from, and relays transit packets along all six ringlets, which is that processing on each of the three rings.

82. **Each ring node arranged to accept a data packet comprising one or more header fields.** Each stack member is arranged to accept a data packet comprising one or more header fields. In Cisco's packet walk, "Packet arrives at ingress port. PHY converts the signal and

[96] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Stack ports.
[97] *Troubleshoot Silent Reloads*, *supra* note 89, SifInfo.
[98] *Catalyst 9300 Architecture White Paper*, *supra* note 85, ASIC interconnect or internal stack interface.
[99] *Troubleshoot Silent Reloads*, *supra* note 89, SifRacStatus.
[100] Cisco, *Stacking and High Availability Configuration Guide, Cisco IOS XE 17.15.x (Catalyst 9300 Switches)*, ch. Managing Switch Stacks, Switch Stack Overview, https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-15/configuration_guide/stck_mgr_ha/b_1715_stck_mgr_ha_9300_cg/managing_switch_stacks.html (last visited Sept. 19, 2026) [hereinafter *IOS XE 17.15.x Stacking Guide, Managing Switch Stacks*].

serializes the bits, and then sends the packet to the NIF (network interface) on the ASIC," and the "Ingress Forwarding Controller (IFC) snoops packets between Ingress FIFO and PBC and performs frame processing and a series of table lookups to deliver the resulting frame descriptor to PBC."[101] The packets are Ethernet frames carrying Layer 2, Layer 3, and Layer 4 headers, and Cisco states that "the Cisco Catalyst 9300 Series stack switches verify the Layer 2 to Layer 3 data variables from incoming traffic."[102] Every member is so arranged, because "The forwarding architecture is designed to provide distributed switching across all member switches in the stack. Each switch in the stack optimizes data plane performance by using its local hardware resources."[103]

83. **Determining an egress ring node to which the data packet is to be forwarded.** Each stack member determines the egress ring node to which a packet crossing the stack is to be forwarded. Cisco states that the packet buffer "uses the 64-byte frame descriptor to determine the egress port and QoS treatment of the frame. As the egress port is on a remote UADP ASIC, PBC sends the frame descriptor to the Ingress Queue and Scheduler (IQS)."[104] The member that owns the egress port is the egress ring node, and the ingress member necessarily identifies it, because delivery on the rings is by destination: "Spatial reuse frees available bandwidth on the ring, as the destination switch strips packets destined to itself, allowing other stack members to insert additional packets onto the ring,"[105] and the stack interface copies and strips by a destination index,

---

[101] *Catalyst 9300 Architecture White Paper*, *supra* note 85, Packet walks.
[102] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Stack design, cross-stack forwarding EtherChannel design.
[103] *Catalyst 9300 Architecture White Paper*, *supra* note 85, StackWise-1T/480/320 Architecture.
[104] *Catalyst 9300 Architecture White Paper*, *supra* note 85, Packet walks, Ingress and egress unicast forwarding across ASICs.
[105] *Catalyst 9300 Architecture White Paper*, *supra* note 85, StackWise-1T/480/320 Architecture.

the "destIndex."[106] Every member is arranged to make this determination: "The ACTIVE switch also updates all member switches for forwarding information," and "the hardware Forwarding Information Base (FIB) is actively programmed in ASICs across all stack-member switches in a stack ring."[107] The '931 Patent describes the same operation, in which the network processor of the ingress node determines "the identity of the appropriate egress node to which the packet should be forwarded" ('931 Patent at 8:60-62).

84. **Identifying a subset of the rings comprising one or more common rings connected to both the ring node and the egress ring node.** Each member identifies the rings connecting it to the egress member. Cisco states that "Once all switches are powered on and the stack interfaces are up, the Stack Discovery Protocol (SDP) discovers the stack topology using broadcasts. Neighbor information is shared with all other switches in the stack."[108] Each UADP ASIC then holds, in its stack interface registers, its own node identifier, the number of nodes on the rings, and a wrapped flag for each of its six ring access controllers: "WrappedAtRac zero to five corresponds [*sic*] whether any stack link is down or not," and a topology change raises an interrupt that Cisco uses to "Monitor for stack bring-up, merge, and wrap scenarios."[109] Cisco's configuration guides state that "A stack is in the full-ring state when all members are connected through the stack ports and are in the ready state," and that each stack port tracks whether it can send traffic toward its neighbor.[110] Because delivery is by destination-based stripping, a member inserting a packet must place it on a ring reaching the destination member, and its reference to this

---

[106] *Troubleshoot Silent Reloads*, *supra* note 89, SIF exceptions table, sifUnmappedDestIndex.
[107] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Distributed forwarding architecture.
[108] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Stacking architecture, SDP.
[109] *Troubleshoot Silent Reloads*, *supra* note 89, SifInfo; SIF exceptions table, sifStackTopologyChange.
[110] *IOS XE 17.15.x Stacking Guide, Managing Switch Stacks*, *supra* note 100, Temporarily Disabling a Stack Port; Monitoring the Device Stack.

topology and per-ring state is the recited identification. In a full-ring stack every member sits on every ring, so the subset is all three rings; the claim covers that case, because a subset "comprising one or more common rings" includes all of them, the '931 Patent's own connectivity table lists all three rings of the network as the common rings for one egress node ('931 Patent at 8:1-16), and dependent claim 16 separately recites a node that is not connected to all the rings.

85. **Selecting, responsively to a value of a header field of the packet, a ringlet of a ring among the common rings.** On information and belief, each stack member selects, responsively to a header field value of the packet, a ringlet of one of the common rings. Each member has exactly two stack ports, one per direction around the ring, and Cisco states that "Traffic on the ring can take either path regardless of its destination."[111] Cisco names the mechanism by which the direction is chosen: in Cisco's own example, "if switch 2 wants to send a keepalive to switch 1, it can go through switches 3, 4, 5, 6, 7, 8 and then 1, or just from from [*sic*] 2 directly to 1. Return traffic from switch 1 to switch 2 that happens to hash toward switch 8 would have been dropped, leading to the timeouts seen in the previous script."[112] Cisco describes the outcome as "Enhanced bidirectional traffic engineering with intelligent network data load sharing within the stack ring and across all distributed uplink physical ports."[113] A hash steering a packet toward one neighbor rather than the other selects a direction, and thus a ringlet, and what the UADP ASIC holds for a packet when it queues the packet to the stack interface is the packet's header and the frame descriptor that the Ingress Forwarding Controller derived from it through

[111] *Troubleshoot Silent Reloads*, *supra* note 89, Stack Member Timeouts/Reloads, Case Study, Symptoms.
[112] *Troubleshoot Silent Reloads*, *supra* note 89, Stack Member Timeouts/Reloads, Case Study, Symptoms.
[113] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Stack design, uplink port design benefits.

"frame processing and a series of table lookups."[114] The '931 Patent describes the same inputs, a hashing function applied to the values of one or more header fields of the packet ('931 Patent at 9:43-45) and a direction setting stored against the destination MAC address (*id.* at 10:5-8), and claim 15 requires only that the selection be made "responsively to" a header field value; the hashing function is added by dependent claim 17.

86. **Forwarding the data packet to the egress ring node over the selected ringlet.** On information and belief, each member forwards the packet to the egress member over the selected ringlet. Cisco states that the ingress ASIC's Ingress Queue and Scheduler "provides queueing and scheduling functions along with congestion management (priority packets are enqueued first on the stack interface) before sending packet to remote UADP ASICs," and that "Packets arriving from the stack interface are buffered in PBC and a descriptor is sent to EQS for further processing."[115] Cisco states that "To optimally forward the traffic within the stack ring, the packet-stripping function is performed on the destination switch instead of on the source or ingress switch. This mechanism is known as the spatial-reuse forwarding mechanism,"[116] and that "Spatial reuse is enabled by destination-based packet stripping and also by allowing multiple flows to coexist."[117] The transit FIFO of each ring access controller is "reponsible [*sic*] for moving data through the SIF to other nodes."[118] Destination-based stripping and spatial reuse are possible only where what a member places on the ring travels one way to the destination member and is removed there, so a packet sent toward one neighbor travels the ringlets running that way and occupies only

[114] *Catalyst 9300 Architecture White Paper*, *supra* note 85, Packet walks.
[115] *Catalyst 9300 Architecture White Paper*, *supra* note 85, Packet walks, Ingress and egress unicast forwarding across ASICs.
[116] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Stackwise-1T/480/320 architecture.
[117] *Catalyst 9300 Architecture White Paper*, *supra* note 85, StackWise-1T/480/320 Architecture.
[118] *Troubleshoot Silent Reloads*, *supra* note 89, SIF exceptions table, sifRac transitFifoSpill.

the span between the ingress member and the egress member. This is the forwarding step of the ’931 Patent, in which the packet is “sent in the selected direction (ringlet) of the selected member (ring)” to the egress node (’931 Patent at 10:20-23). Claim 15 recites selecting “a ringlet” and forwarding “over the selected ringlet”; it does not limit the selection to a single ringlet or forbid the use of more than one ringlet running in the selected direction, and where claim 15 imposes a number it says so, reciting “at least three communication rings” and “at least two ring nodes.” Whether the UADP ASIC places a given packet on one ringlet or spreads it among the ringlets of the selected direction, the packet reaches the egress member over ringlets selected responsively to its header.

87. To the extent any limitation of claim 15 of the ’931 Patent is found not to be literally present in the Accused ’931 Products, that limitation is present under the doctrine of equivalents, because the corresponding feature of the Accused ’931 Products performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation, and differs from it, if at all, only insubstantially from the perspective of a person of ordinary skill in the art. By way of example, Cisco’s six unidirectional, counter-rotating stack rings, three outgoing and three incoming in every stack cable through the same members in the same order, perform substantially the same function as the claimed three concentric rings of paired opposite ringlets, giving one set of ring nodes several parallel ring paths whose capacities add; in substantially the same way, by rings that run alongside one another around one loop of nodes; to achieve substantially the same result, an aggregate stack bandwidth that is a multiple of a single ring. Likewise, a header-derived hash that fixes the direction of travel in one step is interchangeable with the two-step selection of a ring and a direction that the ’931 Patent presents as one way of breaking down the forwarding decision (’931 Patent at 8:57-65, 9:45-48, 10:3-5),

and insertion, transit, and destination stripping on a one-way ring path by the ring access controllers of a UADP ASIC are the same operations as those performed by the line card of the selected ring in the '931 Patent (*id.* at 6:38-40, 10:20-23).

88. Cisco, under 35 U.S.C. § 271(b), has induced and continues to induce third parties, including enterprise customers, telecommunications carriers, and network operators in this District and throughout the United States, to directly infringe at least claim 15 of the '931 Patent by making and using the claimed network. Cisco instructs its customers to build and run the claimed network. Cisco's Catalyst 9300 Hardware Installation Guide presents the full-ring cabling as the recommended configuration: "The example shows the full-ring configuration that provides redundant connections."[119] Cisco's Stacking and High Availability Configuration Guide directs the customer, "After adding or removing stack members, make sure that the switch stack is operating at full bandwidth."[120] Cisco's data sheet promotes StackWise-480 and StackWise-1T stacks of up to eight switches,[121] and Cisco's architecture white papers explain the stack-ring fabric in detail.[122] Since obtaining knowledge of the '931 Patent, including no later than March 2017 on information and belief and no later than the service of this Complaint, Cisco has continued to publish these instructions and to sell the switches and stack cables for this use, with the specific intent that its customers make and use the claimed network, knowing or being willfully blind to the fact that those acts constitute infringement.

---

[119] Cisco, *Cisco Catalyst 9300 Series Switches Hardware Installation Guide*, ch. Installing a Switch, Planning a Switch Data Stack, Data Stack Cabling Configurations, https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/hardware/install/b_c9300_hig/Installing-a-switch.html (last visited Sept. 19, 2026).

[120] *IOS XE 17.15.x Stacking Guide, Managing Switch Stacks*, *supra* note 100, Changes to Switch Stack Membership.

[121] *Catalyst 9300 Data Sheet*, *supra* note 81, Resiliency and high availability.

[122] *Catalyst 9300 StackWise White Paper*, *supra* note 84.

89. Cisco, under 35 U.S.C. § 271(c), has contributorily infringed and continues to contributorily infringe at least claim 15 of the ’931 Patent. With knowledge of the ’931 Patent, Cisco has sold, offered for sale, and imported into the United States the Cisco IOS XE stacking software that runs the StackWise-480 and StackWise-1T stack ring of each Catalyst 9300 and 9300X modular uplink switch. That software constitutes a material part of the claimed network, is made for one purpose, building and operating the stack ring, has no other use, and is not a staple article or commodity of commerce suitable for substantial noninfringing use. Cisco’s customers directly infringe when they use it as Cisco intends.

90. On information and belief, Cisco’s customers directly infringe claim 15 of the ’931 Patent when, following Cisco’s instructions, they cable Catalyst 9300 and 9300X modular uplink switches into StackWise-480 or StackWise-1T stacks and operate them in the United States, including in this District.

91. Alternatively, Cisco has known that there is a high probability that the making, use, sale, offer for sale, and importation of the Accused ’931 Products constitute infringement of the ’931 Patent, and has taken deliberate actions to avoid learning of those facts.

92. Cisco’s infringement of the ’931 Patent has been and is willful. On information and belief, Cisco has had knowledge of the ’931 Patent since no later than March 2017, when Plaintiff’s predecessor in interest gave Cisco notice of its patent portfolio, and Cisco has been aware since no later than October 28, 2014 of the disclosure that the ’931 Patent shares with the ’684 Patent, which the USPTO examiner cited during the prosecution of Cisco’s own application. Cisco has in any event had knowledge of the ’931 Patent and of its infringement since the service of this Complaint. With that knowledge Cisco has continued to make, sell, and support the Accused ’931 Products

without a license, in reckless disregard of Plaintiff's rights, and its continuing infringement merits enhanced damages under 35 U.S.C. § 284.

93. Cisco's acts of direct, induced, and contributory infringement of the '931 Patent have occurred and continue to occur in the United States, including in this District, and have injured and continue to injure Plaintiff. Plaintiff has suffered and continues to suffer damages as a result of Cisco's infringement of the '931 Patent, and Cisco is liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for that infringement, but in no event less than a reasonable royalty, together with interest and costs. Cisco's continuing infringement of the '931 Patent has irreparably harmed and will continue to irreparably harm Plaintiff unless enjoined by this Court.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 7,697,532**

94. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

95. Claim 10 of the '532 Patent recites:

> 10. A network node, comprising:
>
> a network interface, which is arranged to communicate with a communication network; and a processor, which is arranged to encapsulate multiple data packets, which carry data and have respective drop precedence (DP) values selected from a range of possible DP values, so as to produce a concatenated frame of a transport protocol, to assign a composite drop precedence (CDP) value from the range to the concatenated frame using a pseudo-random assignment function that depends on a distribution of the DP values of the data packets in the concatenated frame, and is defined such that a likelihood of assigning a certain CDP value from the range is proportional to a relative amount of the data in the concatenated frame, which is carried by the data packets whose DP value equals the certain CDP value, and to send the concatenated frame to the communication network using the network interface, so as to transport the concatenated frame through the communication

network using the transport protocol, in accordance with the pseudo-randomly assigned CDP value.

96. Claim 19 of the '532 Patent recites:

> 19. A computer software product used in a network node, the product comprising a computer-readable medium, in which program instructions are stored, which instructions, when read by a processor, cause the processor to encapsulate multiple data packets, which carry data and have respective drop precedence (DP) values selected from a range of possible DP values, so as to produce a concatenated frame of a transport protocol, to assign a composite drop precedence (CDP) value from the range to the concatenated frame using a pseudo-random assignment function that depends on a distribution of the DP values of the data packets in the concatenated frame and is defined such that a likelihood of assigning a certain CDP value from the range is proportional to a relative amount of the data in the concatenated frame, which is carried by the data packets whose DP value equals the certain CDP value and to send the concatenated frame to a communication network, so as to transport the concatenated frame through the communication network using the transport protocol, in accordance with the pseudo-randomly assigned CDP value.

97. The Accused '532 Products are Cisco ASR 9000 Series Aggregation Services Routers equipped with the Cisco ASR 9000 SPA Interface Processor-700 ("SIP-700"), of which Cisco states "There are two types of Cisco ASR 9000 SIP-700 available; A9K-SIP-700 and A9K-SIP-700-8G,"[123] and Cisco ATM shared port adapters, including the 1-Port and 3-Port Clear Channel OC-3 ATM SPA and the 1-Port Clear Channel OC-12 ATM SPA, running 32-bit Cisco IOS XR software and carrying Layer 2 ATM traffic over MPLS with ATM cell packing in AAL0 mode, together with the Cisco IOS XR software images that contain the program instructions for

---

[123] Cisco, *Cisco ASR 9000 Series Aggregation Services Router SIP and SPA Hardware Installation Guide*, ch. Overview: Cisco ASR 9000 Series Router SPA Interface Processors, Cisco ASR 9000 SIP-700 Overview, https://www.cisco.com/c/en/us/td/docs/iosxr/asr9000/hardware-install/sip-spa-hig/b-asr9000-sip-and-spa-hardware-installation-guide/b-asr9000-sip-and-spa-hardware-installation-guide_chapter_01.html (last visited Sept. 19, 2026) [hereinafter *ASR 9000 SIP and SPA Hardware Installation Guide, SPA Interface Processors*].

that cell packing and for MPLS experimental bit imposition. Cisco states that "The ASR 9000 SIP-700 is not supported on Cisco IOS XR 64-bit images."[124]

98. Cisco, under 35 U.S.C. § 271(a), has directly infringed and continues to directly infringe at least claims 10 and 19 of the '532 Patent, literally or under the doctrine of equivalents, by making, using, testing, selling, offering for sale, and importing into the United States the Accused '532 Products. Claim 10 is an apparatus claim to a single network node, and Cisco is the direct infringer: Cisco makes, uses, offers to sell, sells, and imports into the United States the ASR 9000 chassis, the SIP-700, the ATM shared port adapters, and the IOS XR software that together constitute the claimed node. Cisco's own use includes operating the node with ATM over MPLS cell packing in the development, test, and validation of the IOS XR ATM features documented in its configuration guides. On information and belief, Cisco continued to sell the SIP-700 through November 30, 2022, has continued to support it, has continued to sell and distribute the 32-bit Cisco IOS XR software images that contain the accused program instructions, including under its software maintenance and service contracts, and has sold and supported the ATM shared port adapters, including through its refurbished equipment program, during the term of the '532 Patent. Claim 19 is a claim to a computer software product stored on a computer-readable medium, and Cisco directly infringes it by making, selling, offering for sale, distributing, and importing the 32-bit Cisco IOS XR software images containing the instructions that cause the SIP-700 and ATM shared port adapter processor to perform the recited operations, independent of when any particular hardware component was last sold. Network operators that deploy the node directly infringe by using it.

---

[124] *ASR 9000 SIP and SPA Hardware Installation Guide, SPA Interface Processors*, *supra* note 123, SIP Software and Hardware Compatibility.

99. The Accused ’532 Products satisfy every limitation of claims 10 and 19 of the ’532 Patent, as set forth below.

100. **A network node.** The Cisco ASR 9000 Series router equipped with a SIP-700 and an ATM shared port adapter and running 32-bit Cisco IOS XR software is a network node. Cisco describes the ASR 9000 Series as routers that “provide unsurpassed speeds, up through 400 Gigabit Ethernet, with scale and high density,”[125] and states that “To implement the ATMoMPLS feature, the Cisco ASR 9000 Series Router plays the role of provider edge (PE) router at the edge of a provider network in which customer edge (CE) devices are connected to the Cisco ASR 9000 Series Router.”[126] In the accused configuration the router is the provider edge node at which ATM cells enter an MPLS network.

101. **A network interface arranged to communicate with a communication network.** The accused node comprises network interfaces arranged to communicate with a communication network. Cisco’s hardware installation guide describes the ATM shared port adapters: “The 1-Port and 3-Port Clear Channel OC-3 ATM SPA is a single-height SPA that installs into one SIP subslot. The Clear Channel OC-3 ATM SPA with small form-factor pluggable (SFP) optical transceiver modules provides SONET and SDH network connectivity with a per-port bandwidth of 155.52 Mbps,” and “The 1-Port Clear Channel OC-12 ATM SPA is a single-

---

[125] Cisco, *Cisco ASR 9000 Series Aggregation Services Routers Data Sheet*, Product overview, https://www.cisco.com/c/en/us/products/collateral/routers/asr-9000-series-aggregation-services-routers/data_sheet_c78-501767.html (last visited Sept. 19, 2026).

[126] Cisco, *L2VPN and Ethernet Services Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 6.5.x*, ch. Implementing Point to Point Layer 2 Services, ATMoMPLS with L2VPN Overview (updated Jan. 30, 2019), https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k-r6-5/lxvpn/configuration/guide/b-l2vpn-cg-asr9000-65x/b-l2vpn-cg-asr9000-65x_chapter_0101.html (last visited Sept. 22, 2026) [hereinafter *ASR 9000 L2VPN Guide 6.5.x, Point to Point Layer 2 Services*].

height ATM SPA that can be installed into one SIP subslot. The OC-12 ATM SPA with small form-factor pluggable (SFP) optical transceiver modules provides SONET and SDH network connectivity with a per-port bandwidth of 622.08 Mbps."[127] Those ATM ports receive the cells that the node packs, and the core-facing ports of the SIP-700 or of an Ethernet line card carry the packed pseudowire packets toward the MPLS network: "The core facing line card on the PE1 and PE2 could be a Cisco ASR 9000 Series SPA Interface Processor-700 or a Cisco ASR 9000 Series Ethernet line card."[128] That core-facing interface exchanges labeled packets with the MPLS network, which is the claimed communication network; "ATMoMPLS is a type of Layer 2 point-to-point connection over an MPLS core."[129] The '532 Patent's own embodiment transports ATM cells over an MPLS label-switched path, the same arrangement Cisco documents ('532 Patent at 5:39-43).

102. **A processor.** The accused node comprises a processor: the SIP-700 together with the segmentation and reassembly logic of the Engine 5 ATM shared port adapter that it hosts, operating under 32-bit Cisco IOS XR. Cisco states that "Layer 2 QoS is supported on all Engine 5 ATM SPAs, including all CEoP SPAs,"[130] and that "The Cisco ASR 9000 Series SPA Interface

---

[127] Cisco, *Cisco ASR 9000 Series Aggregation Services Router SIP and SPA Hardware Installation Guide*, ch. Overview: Cisco ASR 9000 Series Router Shared Port Adapters, 1-Port and 3-Port Clear Channel OC-3 ATM SPA Overview; 1-Port Clear Channel OC-12 ATM SPA Overview, https://www.cisco.com/c/en/us/td/docs/iosxr/asr9000/hardware-install/sip-spa-hig/b-asr9000-sip-and-spa-hardware-installation-guide/b-asr9000-sip-and-spa-hardware-installation-guide_chapter_010.html (last visited Sept. 19, 2026).

[128] *ASR 9000 L2VPN Guide 6.5.x, Point to Point Layer 2 Services*, *supra* note 126, IP Interworking.

[129] *ASR 9000 L2VPN Guide 6.5.x, Point to Point Layer 2 Services*, *supra* note 126, ATMoMPLS with L2VPN Overview.

[130] Cisco, *Interface and Hardware Component Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 6.7.x*, ch. Configuring ATM Interfaces, ATM Layer 2 QoS (updated Jan. 29, 2020), https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k-r6-7/interfaces/configuration/guide/b-interfaces-hardware-component-cg-asr9000-67x/b-interfaces-

Processor-700 and the Cisco ASR 9000 Series Ethernet line cards enable the Cisco ASR 9000 Series Routers to support multiple legacy services."[131] The node as shipped carries the IOS XR program instructions that perform cell packing and MPLS experimental bit imposition, so the processor is arranged to perform the recited functions; the '532 Patent states that the claimed processor's functions may be implemented in hardware, in software on a general-purpose processor, or in a combination of the two ('532 Patent at 5:3-11).

103. **Encapsulating multiple data packets having respective drop precedence values into a concatenated frame of a transport protocol.** The processor of the accused node is arranged to encapsulate multiple ATM cells, each carrying its own cell loss priority ("CLP") value, into a single ATM over MPLS pseudowire packet. Cisco states that in AAL0 mode "Cells are segmented and then reassembled, or packed," and that "The benefits of using AAL0 mode is [*sic*] that groups of ATM cells share a label that maximizes bandwidth efficiencies."[132] Cisco's cell-packing command directs the operator to "Configure the maximum number of cells that can be transmitted in a single packet," and to "Replace cells with the maximum number of cells to use per packet. Range is from 2 through 86," and Cisco's atm mcpt-timer command "lets the user specify the maximum number of microseconds to wait to complete cell packing on a single packet before that packet is transmitted. If the associated MCPT timer expires before the maximum number of cells that can be packed is reached, then the packet is transmitted with the number of cells that have been packed thus far."[133] Each packed cell is a 53-byte ATM cell ("Network nodes

hardware-component-cg-asr9000-67x_chapter_010.html (last visited Sept. 22, 2026) [hereinafter *ASR 9000 ATM Interfaces Guide 6.7.x*].

[131] *ASR 9000 L2VPN Guide 6.5.x, Point to Point Layer 2 Services*, *supra* note 126, IP Interworking.

[132] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, Layer 2 VPN on ATM Interfaces.

[133] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, Cell Packing on L2VPN ACs with AAL0 Mode Encapsulation; Configuring Optional Parameters on a Layer 2 Port Mode AC.

use ATM connections to transfer bits of data organized as 53-byte ATM cells")[134] whose header carries a CLP bit with two possible values, which Cisco's Layer 2 ATM quality of service classifies as drop precedence: "Traffic is classified based on Cell Loss Priority–CLP1, CLP0, or OAM," with the match criteria "match atm clp0" and "match atm clp1."[135] The CLP values are therefore drop precedence values selected from a range of two, the packed packet is the concatenated frame, and MPLS is the transport protocol: "AToM encapsulates Layer 2 frames at the ingress PE router, and sends them to a corresponding PE router at the other end of a pseudowire, which is a connection between the two PE routers."[136] The '532 Patent describes the same encapsulation, bounded by a maximum number of data packets and a latency time-out ('532 Patent at 6:35-43, 8:41-44), with a DP range that in many cases comprises two values (*id.* at 3:59-62), and its simulation uses ATM cells pre-assigned a DP value of 1 or 0 (*id.* at 8:37-41).

104. **Assigning a composite drop precedence value using a pseudo-random assignment function that depends on the distribution of the DP values in the frame.** On information and belief, the accused node assigns each packed pseudowire packet one composite drop precedence value, the EXP value in its imposed MPLS label, by a function implemented in the node that depends on the distribution of CLP values among the packet's cells. Cisco documents the inputs and the output of that function: two through 86 cells per packet, a CLP bit on each cell, ingress classification distinguishing CLP0 from CLP1, and marking of the packed packet by "set mpls exp imposition (AToM only)."[137] Cisco states that "Layer 2 Ingress QoS – classification on

---

[134] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, Information About ATM.
[135] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, ATM Layer 2 QoS, Features; Matching.
[136] *ASR 9000 L2VPN Guide 6.5.x, Point to Point Layer 2 Services*, *supra* note 126, Any Transport over MPLS.
[137] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, ATM Layer 2 QoS, Marking.

ATM CLP, marking with MPLS EXP imposition are supported," and that "Packets can be matched and remarked for CLP0, CLP1, and OAM."[138] The set mpls experimental imposition command "Sets the experimental value of the MPLS packet top-most or imposition labels."[139] Cisco's verification output for a Layer 2 ATM subinterface lists the "Cell Packing Criteria" among the quality of service properties of the policy, tying the marking function of the attachment circuit to its cell-packing operation.[140] The EXP value is written once for each packed packet, because the cells packed together "share a label," and it is a value "from the range" because the ingress policy associates one EXP value with the CLP0 class and another with the CLP1 class. A packet holding cells of both CLP values must be resolved by the node into one value from the range, an outcome the operator's per-class EXP policy does not dictate, and because the number and CLP mix of cells vary with the traffic from packet to packet, the value produced varies with each packet's own distribution of DP values rather than by a fixed rule. That is the pseudo-random, distribution-dependent assignment that claim 10 recites, in which the ingress node "selects the CDP value from the range of the possible values using a pseudo-random assignment function, such that the likelihood of selecting and assigning a certain CDP value depends on the distribution of the DP values of the data packets in the concatenated frame" ('532 Patent at 6:45-50), and which the '532 Patent contrasts with assignment based on "externally-provided a-priori information" (*id.* at 4:36-

[138] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, ATM Layer 2 QoS, Features; Marking.

[139] Cisco, *Modular QoS Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 7.10.x*, ch. Configuring Modular QoS Service Packet Classification, Configuring Class-based Unconditional Packet Marking, https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/710x/qos/configuration/guide/b-qos-cg-asr9k-710x/config-mod-qos-service-packet-classification.html (last visited Sept. 19, 2026) [hereinafter *ASR 9000 Modular QoS Guide 7.10.x, Packet Classification*].

[140] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, Verifying ATM Layer 2 QoS Configuration: Examples.

46). The ’532 Patent states that any suitable method for pseudo-randomly selecting the CDP values with the appropriate likelihoods may be used and that any suitable mechanism may generate the pseudo-random numbers (*id.* at 7:39-41, 10:6-8).

105. **A likelihood proportional to the relative amount of data carried by the packets whose DP value equals the CDP value.** On information and belief, the accused assignment function selects each EXP value with a likelihood equal to the share of the packet’s data carried by cells of the corresponding CLP value. Each quantity defining that likelihood is at hand when a packed packet is marked: fixed-size 53-byte cells, so that data share equals cell share; a counted number of cells per packet, because the node closes the packet either at the configured maximum of two through 86 cells or, on timer expiry, “with the number of cells that have been packed thus far”; and the CLP0 or CLP1 class of each cell.[141] Cisco pairs classification on ATM CLP with MPLS EXP imposition marking so as to carry the cells’ loss priority into the packed packet’s marking. For a packet holding cells of both CLP values, a single marking preserves that loss priority across the MPLS network only if EXP values track the CLP mix in proportion; the ’532 Patent explains that a fixed or majority rule distorts it (’532 Patent at 4:36-46, 8:3-28). The function serving that purpose is therefore proportional as claimed, in the relationship of the ’532 Patent’s own example, in which a frame whose packets are 30 percent DP=0 and 70 percent DP=1 has “a 30% likelihood of assigning CDP=0 and a 70% likelihood of assigning CDP=1” (*id.* at 4:8-15), and for ATM cells the relative amount of data is the number of low-DP cells divided by the total number of cells in the frame (*id.* at 7:1-6, 8:60-9:5).

---

[141] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, Information About ATM; Cell Packing on L2VPN ACs with AAL0 Mode Encapsulation; ATM Layer 2 QoS.

106. **Sending the concatenated frame to the network so as to transport it using the transport protocol.** The processor of the accused node sends each packed pseudowire packet to the MPLS network through a core-facing network interface, and the MPLS network transports that packet to the far-end provider edge router. Cisco states that "AToM encapsulates Layer 2 frames at the ingress PE router, and sends them to a corresponding PE router at the other end of a pseudowire," that "Any Transport over MPLS (AToM) transports Layer 2 packets over a Multiprotocol Label Switching (MPLS) backbone," and that the ASR 9000 "plays the role of provider edge (PE) router" for ATM over MPLS.[142] Cisco's Release 6.5.x guide states that "Traffic reaching the PE is tunneled over a pseudowire (and conversely, traffic arriving over the PW is sent out over the AC). This is the most common scenario."[143] Cisco's ATM configuration guide fixes the moment of sending: when the maximum cell count is reached or when the maximum cell packing timeout expires, "the packet is transmitted with the number of cells that have been packed thus far."[144] The node sends the packet so as to transport it because the label stack it imposes is what causes the MPLS core to carry the packet intact to the egress node, the transporting step that the '532 Patent places at the ingress node ('532 Patent at 7:42-44).

107. **Transport in accordance with the pseudo-randomly assigned CDP value.** The packed pseudowire packet is transported through the MPLS network in accordance with the EXP

---

[142] *ASR 9000 L2VPN Guide 6.5.x, Point to Point Layer 2 Services*, *supra* note 126, Any Transport over MPLS; ATMoMPLS with L2VPN Overview.

[143] Cisco, *Interface and Hardware Component Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 6.5.x*, ch. Configuring ATM Interfaces, Layer 2 VPN on ATM Interfaces, https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k-r6-5/interfaces/configuration/guide/b-interfaces-hardware-component-cg-asr9000-65x/b-interfaces-hardware-component-cg-asr9000-65x_chapter_011.html (last visited Sept. 19, 2026) [hereinafter *ASR 9000 ATM Interfaces Guide 6.5.x*].

[144] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, Cell Packing on L2VPN ACs with AAL0 Mode Encapsulation.

value the accused assignment function assigned to it. Cisco states that its class-based marking will "Mark Multiprotocol Label Switching (MPLS) packets by setting the EXP bits within the imposed or topmost label," and that "The set mpls exp imposition command is supported only on an ingress policy,"[145] so the value is assigned at the node that packs the cells and travels onward in the imposed label. Downstream, Cisco's quality of service "Configures a class map so that the three-bit experimental field in the topmost Multiprotocol Label Switching (MPLS) labels are [*sic*] examined for experimental (EXP) field values,"[146] and Cisco's weighted random early detection "drops packets selectively based on any specified criteria, such as CoS, DSCP, EXP, discard-class, or precedence."[147] Cisco's ATM configuration guide itself lists "match mpls exp topmost (egress only)" among the match criteria supported on Layer 2 ATM interfaces.[148] The packed packet therefore crosses the MPLS network under the drop precedence treatment that its EXP value selects, while the CLP bits of the individual cells remain inside the payload, exactly as in the '532 Patent, where the nodes along the connection "extract the CDP value from the concatenated frame, and determine whether to drop or forward the frame based on the CDP value" ('532 Patent at 7:44-46) because they have no access to the DP values of the packets inside the frame (*id.* at 6:4-8).

---

[145] *ASR 9000 Modular QoS Guide 7.10.x, Packet Classification*, *supra* note 139, Class-based Unconditional Packet Marking Feature and Benefits; MPLS Experimental Bit Imposition Marking Configuration: Example.

[146] *ASR 9000 Modular QoS Guide 7.10.x, Packet Classification*, *supra* note 139, Creating a Traffic Class.

[147] Cisco, *Modular QoS Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 6.5.x*, ch. Configuring Modular QoS Congestion Avoidance, Configuring Weighted Random Early Detection (updated Jan. 1, 2019), https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k-r6-5/qos/configuration/guide/b-qos-cg-asr9000-65x/b-qos-cg-asr9000-65x_chapter_0100.html (last visited Sept. 22, 2026).

[148] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, ATM Layer 2 QoS, Matching.

108. **Claim 19.** The 32-bit Cisco IOS XR software images that Cisco makes, sells, distributes, and installs on the Accused '532 Products are computer software products used in a network node, comprising a computer-readable medium in which program instructions are stored. When read by the processor of the SIP-700 and ATM shared port adapter, those instructions cause the processor to perform each of the operations described above: to encapsulate multiple ATM cells having respective CLP values into a packed ATM over MPLS pseudowire packet, to assign a composite drop precedence value, the imposed EXP value, by the distribution-dependent, proportional assignment function described above, and to send the packed packet to the MPLS network so as to transport it in accordance with that value. Cisco's documentation of these functions as features of specific IOS XR releases, including Releases 6.5.x and 6.7.x, confirms that the program instructions reside in the software images Cisco distributes.[149]

109. To the extent any limitation of claims 10 or 19 of the '532 Patent is found not to be literally present in the Accused '532 Products, that limitation is present under the doctrine of equivalents, because the corresponding feature of the Accused '532 Products performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation, and differs from it, if at all, only insubstantially from the perspective of a person of ordinary skill in the art. By way of example, to the extent the accused assignment function takes its per-frame variability from a hardware counter, a hash, or another source other than a dedicated pseudo-random number generator, and weighs that draw against the CLP mix of the frame, it performs substantially the same function as the claimed pseudo-random assignment function, choosing one drop precedence value for a frame of mixed-DP packets so that

---

[149] *ASR 9000 ATM Interfaces Guide 6.5.x*, *supra* note 143, Cell Packing on L2VPN ACs with AAL0 Mode Encapsulation; *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130, Cell Packing on L2VPN ACs with AAL0 Mode Encapsulation.

frame markings follow the DP mix of the traffic; in substantially the same way, by a per-frame draw whose outcome turns on the DP mix of the frame; to achieve substantially the same result, EXP markings that over many packed packets occur in the same proportion as the CLP values of the cells. The ’532 Patent itself states that “Any other suitable mechanism can also be used for generating pseudo-random numbers” (’532 Patent at 10:6-8), and a person of ordinary skill would treat a free-running counter or a hash as a known substitute for the linear feedback shift register of the described embodiment.

110. Cisco, under 35 U.S.C. § 271(b), has induced and continues to induce third parties, including telecommunications carriers and network operators in this District and throughout the United States, to directly infringe at least claim 10 of the ’532 Patent by using the claimed node. Cisco instructs its customers, through its Interface and Hardware Component Configuration Guide for the ASR 9000 and its L2VPN and Ethernet Services Configuration Guide for the ASR 9000, to configure AAL0 cell packing, classification on ATM CLP, and MPLS EXP imposition marking on Layer 2 ATM attachment circuits carried over MPLS pseudowires,[150] and Cisco delivers the IOS XR software that performs those functions with the accused hardware and under its software maintenance contracts. Since obtaining knowledge of the ’532 Patent, including no later than March 2017 on information and belief and no later than the service of this Complaint, Cisco has continued to publish those instructions, to distribute the software, and to support the accused configuration, with the specific intent that its customers use the claimed node, knowing or being willfully blind to the fact that such use constitutes infringement.

[150] *ASR 9000 ATM Interfaces Guide 6.7.x*, *supra* note 130; *ASR 9000 L2VPN Guide 6.5.x, Point to Point Layer 2 Services*, *supra* note 126.

111. Cisco, under 35 U.S.C. § 271(c), has contributorily infringed and continues to contributorily infringe at least claim 10 of the ’532 Patent. With knowledge of the ’532 Patent, Cisco has sold, offered for sale, and imported into the United States the SIP-700, the ATM shared port adapters, and the 32-bit Cisco IOS XR software images containing the cell-packing and EXP imposition program instructions, which constitute a material part of the claimed node, are especially made and especially adapted for packing ATM cells into MPLS pseudowire packets marked with a composite drop precedence, and are not staple articles or commodities of commerce suitable for substantial noninfringing use. Cisco’s customers directly infringe when they use those components as Cisco intends.

112. On information and belief, Cisco’s customers directly infringe claim 10 of the ’532 Patent when they deploy and use the Accused ’532 Products as Cisco instructs, in the United States, including in this District.

113. Alternatively, Cisco has known that there is a high probability that the making, use, sale, offer for sale, and importation of the Accused ’532 Products constitute infringement of the ’532 Patent, and has taken deliberate actions to avoid learning of those facts.

114. Cisco’s infringement of the ’532 Patent has been and is willful. On information and belief, Cisco has had knowledge of the ’532 Patent since no later than March 2017, when Plaintiff’s predecessor in interest gave Cisco notice of its patent portfolio, and Cisco has in any event had knowledge of the ’532 Patent and of its infringement since the service of this Complaint. With that knowledge Cisco has continued to make, sell, distribute, and support the Accused ’532 Products without a license, in reckless disregard of Plaintiff’s rights, and its continuing infringement merits enhanced damages under 35 U.S.C. § 284.

115. Cisco's acts of direct, induced, and contributory infringement of the '532 Patent have occurred and continue to occur in the United States, including in this District, and have injured and continue to injure Plaintiff. Plaintiff has suffered and continues to suffer damages as a result of Cisco's infringement of the '532 Patent, and Cisco is liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for that infringement, but in no event less than a reasonable royalty, together with interest and costs. Cisco's continuing infringement of the '532 Patent has irreparably harmed and will continue to irreparably harm Plaintiff unless enjoined by this Court.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 6,952,397

116. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

117. Claim 15 of the '397 Patent recites:

> 15. A method for communication, comprising:
>
> coupling a plurality of communication nodes together in a ring, so as to enable each of the nodes to transmit traffic simultaneously in both clockwise and counterclockwise directions; and
>
> configuring at least one of the nodes to receive the traffic in only one of the directions at any given time,
>
> wherein configuring the at least one of the nodes comprises configuring each of a multiplicity of the nodes in the ring to receive the traffic only in a respective one of the directions, and selecting the respective direction for each of the multiplicity of the nodes so as to balance the traffic carried in the clockwise and counterclockwise directions around the ring.

118. The Accused '397 Products are Cisco ME 3600X Series Ethernet Access Switches and Cisco ME 3800X Series Carrier Ethernet Switch Routers coupled in a Resilient Ethernet Protocol ("REP") ring segment and configured for REP VLAN load balancing. Cisco's

configuration guide for those switches describes REP as "a Cisco proprietary protocol that provides an alternative to Spanning Tree Protocol (STP) to control network loops, to respond to link failures, and to improve convergence time. REP controls a group of ports connected in a segment, ensures that the segment does not create any bridging loops, and responds to link failures within the segment. REP provides a basis for constructing more complex networks and supports VLAN load balancing."[151] Cisco wrote its instructions for the people who configure the switches ("This guide is for the networking professional using the Cisco IOS command-line interface (CLI) to manage the Cisco Metro Ethernet (ME) 3800X and ME 3600X switches") and delivered the Cisco IOS software that carries out REP with each switch and under its service contracts ("If you have a service support contract and order a software license or if you order a switch, you receive the universal software image, available in crypto an [*sic*] noncrypto versions").[152]

119. The '397 Patent expired on October 31, 2023. Cisco's retirement notification for the ME 3800X Series states "End-of-Sale Date: 2017-10-15" and "End-of-Support Date: 2022-10-31,"[153] and, on information and belief, the ME 3600X Series carried the same milestones. Cisco therefore supported the installed base of the Accused '397 Products, under service contracts,

---

[151] Cisco, *Cisco ME 3800x and ME 3600x Switches Software Configuration Guide, Cisco IOS Release 15.4(2)S*, ch. Configuring Resilient Ethernet Protocol (Internet Archive capture of May 27, 2022), first paragraph, https://web.archive.org/web/20220527160703/https://www.cisco.com/c/en/us/td/docs/switches/metro/me3600x_3800x/software/release/15-4_2_S/configuration/guide/3800x3600xscg/swrep.html (last visited Sept. 19, 2026) [hereinafter *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*].

[152] Cisco, *Cisco ME 3800X, ME 3600X, ME 3600X-24CX Switch Command Reference, Release 15.3(3)S*, Preface, Audience; Purpose (updated July 30, 2013), https://www.cisco.com/c/en/us/td/docs/switches/metro/me3600x_3800x/software/release/15-3_3_S/command/reference/3800x3600xcr/preface.html (last visited Sept. 19, 2026).

[153] Cisco, *Cisco ME 3800X Series Carrier Ethernet Switch Routers, Retirement Notification* (Internet Archive capture of Apr. 7, 2025), https://web.archive.org/web/20250407162331/https://www.cisco.com/c/en/us/obsolete/switches/cisco-me-3800x-series-carrier-ethernet-switch-routers.html (last visited Sept. 19, 2026).

through October 31, 2022, within the term of the ’397 Patent and within the six years preceding the filing of this Complaint. On information and belief, during that period Cisco continued to make the Accused ’397 Products available through the Cisco Certified Refurbished Equipment program, continued to publish the configuration guides and command references that instruct operators to build REP ring segments and configure VLAN load balancing, continued to deliver Cisco IOS software images for the Accused ’397 Products, and provided technical assistance to operators running them, and Cisco’s customers continued to build, expand, repair, reconfigure, and operate REP ring segments of ME 3600X and ME 3800X switches with VLAN load balancing in the United States.

120. Cisco, under 35 U.S.C. § 271(a), directly infringed at least claim 15 of the ’397 Patent, literally or under the doctrine of equivalents, during its term. Claim 15 is a method claim, and every step is performed by a single actor, the party that cables the switches into the ring segment and enters the REP commands. Cisco itself performed every step in the United States when it built REP ring segments of ME 3600X and ME 3800X switches and configured VLAN load balancing in its own laboratories and in its test, demonstration, and validation networks, including in developing, testing, documenting, and supporting the feature and in supporting customers through October 31, 2022. Cisco’s customers likewise performed every step during the term of the ’397 Patent when they built a ring, added or replaced a switch in a ring, entered the rep segment and rep block port commands, and triggered VLAN load balancing, manually with the rep preempt segment command or automatically after a link failure and recovery under the rep preempt delay command.

121. The Accused ’397 Products, and the method by which they are built and configured as Cisco instructs, satisfy every limitation of claim 15 of the ’397 Patent, as set forth below.

122. **A method for communication.** Building and operating a REP ring of ME 3600X and ME 3800X switches with VLAN load balancing is a method for communication. Cisco describes REP as controlling "a group of ports connected in a segment" of switches that forward VLAN traffic, and describes the arrangement in which both edge ports sit on one switch as a ring segment through which "you can create a redundant connection between any two switches in the segment."[154]

123. **Coupling a plurality of communication nodes together in a ring so as to enable each node to transmit traffic simultaneously in both directions.** The operator couples a plurality of ME 3600X and ME 3800X switches together in a ring by connecting the two REP segment ports of each switch to its two neighbors and closing the chain at the switch that holds both edge ports. Cisco states: "The segment shown in Figure 17-2, with both edge ports located on the same switch, is a ring segment. In this configuration, there is connectivity between the edge ports through the segment. With this configuration, you can create a redundant connection between any two switches in the segment."[155] Cisco states that "A switch can have only two ports belonging to the same segment, and each segment port can have only one external neighbor," and that "REP ports must be Layer 2 trunk ports. REP ports cannot be access ports."[156] Each switch's two segment ports face the two opposing directions around the ring, and each is a Layer 2 trunk port that carries the traffic of the VLANs allowed on it, so that coupling the switches in this way enables every switch to transmit out of both segment ports, in both directions around the ring, at the same time.

---

[154] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Understanding REP.
[155] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Understanding REP.
[156] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Understanding REP; REP Configuration Guidelines.

With VLAN load balancing configured, "REP VLAN balancing is achieved by blocking some VLANs at a configured alternate port and all other VLANs at the primary edge port,"[157] "The alternate port specified in the load-balancing configuration blocks the configured VLANs and unblocks all other segment ports,"[158] and Cisco's sample topology output shows the intermediate switches' segment ports as "Open Port, all vlans forwarding."[159] Cisco requires that "You must configure all trunk ports in the segment with the same set of allowed VLANs, or a misconfiguration occurs,"[160] and confirms that every segment port of every switch is a transmitting port for its direction of the ring: "If one or more ports in a segment is [*sic*] not operational, causing a link failure, all ports forward traffic on all VLANs to ensure connectivity."[161] The '397 Patent describes the ring as nodes "mutually connected by a bidirectional communication medium, such as optical fibers or conductive wires" ('397 Patent at 1:27-32), uses "clockwise" and "counterclockwise" only "to distinguish between the two opposing directions of packet flow in a ring network" (*id.* at 1:38-42), contemplates a ring that operates over Ethernet media (*id.* at 7:24-26), and extends to bidirectional ring networks of other types (*id.* at 8:26-31).

---

[157] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, VLAN Load Balancing.

[158] Cisco, *Cisco ME 3800X, ME 3600X, ME 3600X-24CX Switch Command Reference, Release 15.3(3)S*, Cisco IOS Commands, aaa through reserved-only, rep block port, Usage Guidelines, https://www.cisco.com/c/en/us/td/docs/switches/metro/me3600x_3800x/software/release/15-3_3_S/command/reference/3800x3600xcr/cli1.html (last visited Sept. 19, 2026) [hereinafter *ME 3800X and ME 3600X Command Reference, aaa through reserved-only*].

[159] Cisco, *Cisco ME 3800X, ME 3600X, ME 3600X-24CX Switch Command Reference, Release 15.3(3)S*, Cisco IOS Commands, rmon through show vmps, show rep topology, Examples, https://www.cisco.com/c/en/us/td/docs/switches/metro/me3600x_3800x/software/release/15-3_3_S/command/reference/3800x3600xcr/cli2.html (last visited Sept. 19, 2026) [hereinafter *ME 3800X and ME 3600X Command Reference, rmon through show vmps*].

[160] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, REP Configuration Guidelines.

[161] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Understanding REP (list following "REP segments have these characteristics").

124. **Configuring at least one of the nodes to receive the traffic in only one of the directions at any given time.** The operator configures at least one switch of the ring, the switch that holds the alternate port, to receive the ring's traffic from only one direction at any given time. The configuring act is the entry of the rep segment command on the segment interfaces ("For REP operation, you need to enable it on each segment interface and to identify the segment ID"; "To enable Resilient Ethernet Protocol (REP) on an interface and to assign a segment ID to it, use the rep segment command in interface configuration mode"), together with the "preferred" keyword or the rep block port command where the operator designates which port takes the alternate role ("(Optional) Specifies that the port is the preferred alternate port or the preferred port for VLAN load balancing").[162] Cisco states that once the adjacencies form, "the port changes to alternate port state, blocking all VLANs on the interface. Blocked port negotiations occur and when the segment settles, one blocked port remains in the alternate role, and all other ports become open ports," and that "If all ports in the segment are operational, one port (referred to as the alternate port) is in the blocked state for each VLAN."[163] Cisco cautions that "REP blocks all VLANs until another REP interface sends a message to unblock the VLAN."[164] A switch whose segment port is blocked for a VLAN therefore admits that VLAN's frames only through its other segment port, from one direction around the ring, until, as Cisco describes, "When a failure occurs in a link, all ports move to the open state. When the alternate port receives the failure notification, it changes to the open state, forwarding all VLANs," and "When the failed link comes back up, a logically blocked port

[162] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Configuring REP Interfaces; *ME 3800X and ME 3600X Command Reference, aaa through reserved-only*, *supra* note 158, rep segment.
[163] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, REP Ports; Understanding REP (list following "REP segments have these characteristics").
[164] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, REP Configuration Guidelines.

per VLAN is selected with minimal disruption to the network."[165] That is the configuration the '397 Patent describes: a node that transmits on both rings but is configured "to receive traffic only on one of the rings at any given time" and "can alter its choice of ring subsequently" ('397 Patent at 5:36-46), the receive direction being a port that the node opens on the ring it has chosen (*id.* at 5:63-65). Claim 15 requires a configuration of the node, not a particular hardware interface; the separate data-rate limitation of claim 19 is not part of claim 15.

125. **Configuring each of a multiplicity of the nodes to receive the traffic only in a respective one of the directions.** Configuring VLAN load balancing configures each of two switches in the ring to receive its assigned traffic from only its respective direction. Cisco states that "If VLAN load balancing is configured, two ports in the segment control the blocked state of VLANs," and that "REP VLAN balancing is achieved by blocking some VLANs at a configured alternate port and all other VLANs at the primary edge port."[166] Cisco's worked example places those two ports on two different switches: "This example shows how to configure REP VLAN load balancing on the Switch B primary edge port (Gigabit Ethernet port 0/1) and to configure Gigabit Ethernet port 0/2 of Switch A as the alternate port to block VLANs 1 to 100."[167] In Cisco's configuration guide example, "The alternate port is the neighbor with neighbor offset number 4. After manual preemption, VLANs 100 to 200 are blocked at this port, and all other VLANs are blocked at the primary edge port E1 (Gigabit Ethernet port 0/1)."[168] When load balancing is

---

[165] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, REP Ports; Understanding REP (list following "REP segments have these characteristics").

[166] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Understanding REP (list following "REP segments have these characteristics"); VLAN Load Balancing.

[167] *ME 3800X and ME 3600X Command Reference, aaa through reserved-only*, *supra* note 158, rep block port, Examples.

[168] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Configuring REP Interfaces.

triggered, "the primary edge port sends a message to alert all interfaces in the segment about the preemption. When the secondary port receives the message, it is reflected into the network to notify the alternate port to block the set of VLANs specified in the message and to notify the primary edge port to block the remaining VLANs."[169] Cisco's sample topology output shows a primary edge port and an intermediate port on a different switch each as "Alternate Port, some vlans blocked."[170] The switch that holds the alternate port receives the listed VLANs' traffic only through its other segment port, from one ring direction, and the edge switch receives the traffic of the remaining VLANs only through its secondary edge port, from the direction that port faces. Two switches are a multiplicity of the nodes in the ring; the '397 Patent describes this arrangement as one in which the at least one node "includes multiple nodes, each configured to receive the traffic only in a respective one of the directions" ('397 Patent at 4:4-9).

126. **Selecting the respective direction for each of the multiplicity of the nodes so as to balance the traffic carried in the clockwise and counterclockwise directions around the ring.** The operator selects the receive direction of each configured switch, so as to balance the traffic carried around the ring, when it enters the rep block port command on the primary edge port. Cisco states that "REP also supports VLAN load-balancing, controlled by the primary edge port but occurring at any port in the segment,"[171] and directs the operator to "Configure VLAN load balancing on the primary edge port, identify the REP alternate port, and configure the VLANs

---

[169] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, VLAN Load Balancing.

[170] *ME 3800X and ME 3600X Command Reference, rmon through show vmps*, *supra* note 159, show rep topology, Examples.

[171] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Understanding REP.

to be blocked on the alternate port."[172] The command makes two selections: which port of the ring is the alternate port, by port ID, by neighbor offset number, or by the preferred keyword, and which VLANs are blocked there, "a VLAN ID from 1 to 4094 or a range or sequence of VLANs (such as 1-3, 22, 41-44) of VLANs [*sic*] to be blocked," with all other VLANs blocked at the primary edge port.[173] Cisco instructs that "You configure VLAN load balancing by entering the rep block port {id port-id | neighbor_offset | preferred} vlan {vlan-list | all} interface configuration command on the REP primary edge port before you manually start preemption."[174] Selecting the port at which a VLAN set is blocked selects the receive direction of the switch that holds that port, and the same command fixes the receive direction of the edge switch for the remaining VLANs. The selection is made so as to balance the traffic: Cisco names the function "VLAN load balancing," and without it "the default after manual preemption is to block all VLANs at the primary edge port,"[175] so that all VLANs follow the same path around the ring, whereas with it the VLANs are divided into two sets blocked at two different points of the ring, so that for any two switches that have one blocking point on each of the two arcs between them, the first VLAN set travels one way around the ring and the second set travels the opposite way. Cisco directs the operator to adjust the division: "The primary edge port determines the local VLAN load balancing configuration. Reconfigure the primary edge port to reconfigure load balancing."[176] This is the balancing the '397 Patent

---

[172] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Configuring REP Interfaces.
[173] *ME 3800X and ME 3600X Command Reference, aaa through reserved-only*, *supra* note 158, rep block port, Syntax Description.
[174] *ME 3800X and ME 3600X Command Reference, aaa through reserved-only*, *supra* note 158, rep preempt segment, Usage Guidelines.
[175] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Default REP Configuration.
[176] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, VLAN Load Balancing.

describes, in which receive directions are chosen so that "the full bidirectional bandwidth of the network can be exploited" ('397 Patent at 3:31-34) with "approximately equal loading of rings 26 and 28" (*id.* at 6:59-62); claim 15 does not limit who or what makes the selection, and the '397 Patent states that criteria other than the shortest path to a gateway are available for choosing the receive directions (*id.* at 5:65-66).

127. To the extent any limitation of claim 15 of the '397 Patent is found not to be literally present in the method performed with the Accused '397 Products, that limitation is present under the doctrine of equivalents, because the corresponding step performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed step, and differs from it, if at all, only insubstantially from the perspective of a person of ordinary skill in the art. By way of example, placing one of a switch's two segment ports in the REP blocked state performs substantially the same function as the claimed configuring, limiting the node's reception of the ring traffic to one ring direction at a time; in substantially the same way, as a configured state of the node's ring-facing port under which traffic arriving from one direction is not accepted while traffic arriving from the other direction is accepted, the state being changeable while the network is running; to achieve substantially the same result, that the node takes in the traffic from a single direction at any given time. Likewise, the operator's rep block port selection performs substantially the same function as the claimed selecting, choosing the receive direction of each configured switch so that the ring's traffic is spread over both ways around the ring instead of one; in substantially the same way, by choosing for each configured node which of its two ring-facing ports is closed to the traffic, with load distribution as the criterion; to achieve substantially the same result, division of the ring's traffic between the two ways around the ring.

128. Cisco, under 35 U.S.C. § 271(b), induced third parties, including telecommunications carriers, enterprise customers, and network operators in this District and throughout the United States, to directly infringe at least claim 15 of the '397 Patent during its term by performing the claimed method with the Accused '397 Products. Cisco instructed its customers to perform each step. Cisco's ME 3800X and ME 3600X Switch Software Configuration Guide shows the customer how to build a ring segment, directs that REP be enabled on each segment interface with a segment ID, directs the customer to configure a primary edge port, and gives the rep block port command as the step that configures VLAN load balancing, identifies the alternate port, and sets the VLANs blocked at that port, with a worked example of the exact commands.[177] Cisco's Command Reference repeats the instruction ("To configure Resilient Ethernet Protocol (REP) VLAN load balancing, use the rep block port command in interface configuration mode on the REP primary edge port") and supplies the command that puts the configuration into effect ("To manually start Resilient Ethernet Protocol (REP) VLAN load balancing on a segment, use the rep preempt segment command in privileged EXEC mode").[178] Cisco published those instructions on cisco.com throughout the term of the '397 Patent, and Cisco's Release 15.4(2)S configuration guide for the same switches, as published on cisco.com in 2022, carried the same instructions.[179] Cisco had actual knowledge of the '397 Patent since no later than July 2, 2013, as alleged above, and, on information and belief, since no later than March 2017 through the notice given by Plaintiff's predecessor in interest. With that knowledge, and knowing or being willfully blind to the fact that the acts it instructed constitute infringement, Cisco

[177] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151, Configuring REP Interfaces.
[178] *ME 3800X and ME 3600X Command Reference, aaa through reserved-only*, *supra* note 158, rep block port; rep preempt segment.
[179] *ME 3800x and ME 3600x Configuration Guide 15.4(2)S, REP*, *supra* note 151.

continued through the term of the ’397 Patent to publish those instructions, to deliver the Cisco IOS software that performs REP VLAN load balancing, to sell the Accused ’397 Products through October 15, 2017 and, on information and belief, through its refurbished equipment program thereafter, and to support the installed base under service contracts through October 31, 2022, with the specific intent that its customers perform the claimed method.

129. Cisco, under 35 U.S.C. § 271(c), contributorily infringed at least claim 15 of the ’397 Patent during its term. With knowledge of the ’397 Patent, Cisco sold, offered for sale, and imported into the United States the Accused ’397 Products and the Cisco IOS software images containing the REP and REP VLAN load balancing program instructions, which constitute a material part of the claimed method, are especially made and especially adapted for building a ring segment in which each of two switches is configured to receive a set of VLANs from only one direction so as to balance the ring’s traffic, and are not staple articles or commodities of commerce suitable for substantial noninfringing use. The REP VLAN load balancing feature has no use other than to perform the claimed division of ring traffic between the two directions of a ring, and Cisco’s customers directly infringed when they used it as Cisco intended.

130. On information and belief, Cisco’s customers directly infringed claim 15 of the ’397 Patent during its term when, following Cisco’s instructions, they built, expanded, repaired, reconfigured, and operated REP ring segments of ME 3600X and ME 3800X switches with VLAN load balancing in the United States, including in this District.

131. Alternatively, during the term of the ’397 Patent, Cisco knew that there was a high probability that the sale, support, and use of the Accused ’397 Products constituted infringement of the ’397 Patent, and took deliberate actions to avoid learning of those facts.

132. Cisco's infringement of the '397 Patent was willful from the time Cisco obtained knowledge of the '397 Patent through the expiration of the '397 Patent on October 31, 2023. Cisco's knowledge includes, no later than July 2, 2013, the USPTO examiner's citation of the '397 Patent during the prosecution of Cisco's own application for a patent on a dual-ring packet network, and, on information and belief, the March 2017 notice given by Plaintiff's predecessor in interest. Such willful conduct during the term of the '397 Patent merits enhanced damages under 35 U.S.C. § 284.

133. Cisco's acts of direct, induced, and contributory infringement of the '397 Patent occurred in the United States, including in this District, during the term of the '397 Patent, and injured and damaged Plaintiff. Because the '397 Patent has expired, Plaintiff does not seek injunctive relief with respect to the '397 Patent. Plaintiff has suffered damages as a result of Cisco's infringement of the '397 Patent during its term, and Cisco is liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for that infringement, but in no event less than a reasonable royalty, together with interest and costs.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 8,009,684

134. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

135. Claim 1 of the '684 Patent recites:

> 1. A method for communication, comprising:
>
> configuring a plurality of ring nodes to communicate over a communication network comprising at least two communication rings in an asymmetric layout, exactly one of which communication rings is an anchor ring, each communication ring comprising two unidirectional ringlets in mutually-opposite directions,

> wherein the asymmetric layout is such that not all the nodes of the plurality of ring nodes are connected to all the communication rings,
>
> wherein the anchor ring is the only communication ring of the communication network connected to all the nodes of the plurality of ring nodes, and
>
> wherein at least two of the plurality of ring nodes are each connected to at least two of the communication rings;
>
> accepting a data packet comprising one or more header fields at an ingress ring node;
>
> determining an egress ring node to which the data packet is to be forwarded by the ingress ring node;
>
> identifying a subset of the communication rings comprising one or more common communication rings that are connected to both the ingress and egress ring nodes;
>
> responsively to a respective value of at least one of the header fields of the packet, selecting a ringlet of a communication ring among the one or more common communication rings; and
>
> forwarding the data packet from the ingress ring node to the egress ring node over the selected ringlet.

136. The Accused ’684 Products are Cisco Industrial Ethernet 4000 Series (“IE 4000”) switches running Cisco IOS and operating in multiple REP ring segments that share one or more switches, with REP VLAN load balancing, and such switches operating in High-availability Seamless Redundancy (“HSR”) rings joined by QuadBox nodes. Cisco’s data sheet describes the IE 4000 Series as delivering “Gigabit connectivity to Cisco ruggedized switching portfolio with superior high-bandwidth switching capacity and proven Cisco IOS® Software” and “industry-leading convergence ring protocols to support resilient and scalable networks,” promotes the switch as offering a “Resilient dual ring design via 4x Gigabit Ethernet uplink ports,” and states that it “Delivers multiple rings, redundant ring topology for new network configurations.”[180]

[180] Cisco, *Cisco Industrial Ethernet 4000 Series Switches Data Sheet*, Doc. No. c78-733058, Product overview; Table 1 (updated Jan. 12, 2024),

Cisco's configuration guide for the IE 4000 describes REP as a protocol that "controls a group of ports connected in a segment, ensures that the segment does not create any bridging loops, and responds to link failures within the segment. REP provides a basis for constructing more complex networks and supports VLAN load balancing."[181]

137. The '684 Patent expired on March 2, 2026. Cisco made, sold, offered for sale, imported, and supported the IE 4000 Series in the United States throughout the six years preceding the filing of this Complaint and through the expiration of the '684 Patent, and, on information and belief, Cisco announced the end of life of the IE 4000 Series on January 26, 2024 and continues to support the installed base. Cisco's REP documentation for the IE 4000, updated as recently as June 11, 2024, continued to instruct customers in deploying multiple REP rings.[182]

138. Cisco, under 35 U.S.C. § 271(a), directly infringed at least claim 1 of the '684 Patent, literally or under the doctrine of equivalents, during its term. Claim 1 is a method claim, and every step is performed by, or attributable to, a single actor, the network operator that deploys IE 4000 switches in the accused multi-ring REP configuration: that operator performs the configuring step when it enters the ring configuration on each switch, and performs the accepting, determining, identifying, selecting, and forwarding steps each time its switches, running Cisco

---

https://www.cisco.com/c/en/us/products/collateral/switches/industrial-ethernet-4000-series-switches/datasheet-c78-733058.html (last visited Sept. 19, 2026) [hereinafter *IE 4000 Data Sheet*].

[181] Cisco, *Cisco Industrial Ethernet 4000, 4010 and 5000 Switch Software Configuration Guide, Cisco IOS Release 15.2(4)EC*, ch. Configuring Resilient Ethernet Protocol, REP (updated Sept. 16, 2016), https://www.cisco.com/c/en/us/td/docs/switches/lan/cisco_ie4010/software/release/15-2_4_EC/configuration/guide/scg-ie4010_5000/swrep.html (last visited Sept. 19, 2026) [hereinafter *IE 4000 Configuration Guide, REP*].

[182] Cisco, *Configuring Resilient Ethernet Protocol for IE 4000, IE 4010, and IE 5000 Switches*, ch. Information About Configuring REP (updated June 11, 2024), https://www.cisco.com/c/en/us/td/docs/switches/lan/industrial/software/configuration/guide/b-configuring-resilient-ethernet-protocol/m-information-about-configuring-rep.html (last visited Sept. 19, 2026) [hereinafter *IE 4000 REP Guide, Information About Configuring REP*].

IOS under its control, carry a frame across the ring network. Cisco itself performed the method in the United States each time it configured and ran IE 4000 switches in multi-ring REP topologies in its own laboratories and in the test, demonstration, and validated-design networks from which its configuration guides and design guides are written; Cisco's configuration guides reproduce the rep segment and rep block port commands as entered at the switch prompt, and Cisco's design guides describe the ring designs Cisco validated.[183]

139. The Accused '684 Products, and the method by which they are configured and operated as Cisco instructs, satisfy every limitation of claim 1 of the '684 Patent, as set forth below.

140. **A method for communication.** Operating IE 4000 switches in a multi-ring REP network is a method for communication. Ethernet frames enter the ring network at one IE 4000, travel around the ring through the open ports of the intervening switches, and leave at another IE 4000. Cisco describes REP as controlling "a group of ports connected in a segment" and as "a basis for constructing more complex networks" that "supports VLAN load balancing," and describes the ring segment as a configuration with which "you can create a redundant connection between any two switches in the segment."[184]

141. **Configuring a plurality of ring nodes to communicate over a communication network.** Each IE 4000 in the accused network is a ring node that the operator configures through Cisco IOS to communicate over the ring network. Cisco instructs that "For REP operation, you need to enable it on each segment interface and identify the segment ID," that "REP ports must be

---

[183] *IE 4000 Configuration Guide, REP*, *supra* note 181, Configuring VLAN Blocking: Example; Cisco, *Substation Automation, The New Digital Substation, Version 3.2 Design Guide*, section Resilient Ethernet Protocol (Oct. 2024), https://www.cisco.com/c/dam/en/us/td/docs/solutions/Verticals/Utilities/SA/3-1/SA-3-2-DG.pdf (last visited Sept. 21, 2026) [hereinafter *Substation Automation Design Guide v3.2*].
[184] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP; Figure 53, REP Ring Segment.

Layer 2 trunk ports," and that a primary and a secondary edge port must be configured on each segment.[185] Cisco further automates that configuration through REP Zero Touch Provisioning, by which a new downstream switch receives its configuration and configures its own interface for REP, and through REP Segment-ID Autodiscovery, which Cisco offers for "multiple REP ring deployments": "You can use REP Segment-ID Autodiscovery in several different scenarios. You can insert a new switch into an existing REP segment or in a new REP segment that you build yourself. The feature is ideal for multiple REP ring deployments when incorrect REP Segment IDs might be entered manually. Such errors can occur when deploying multiple REP rings from the same REP seed node."[186] In the HSR-HSR configuration, activating HSR-HSR mode on each QuadBox creates the HSR ring interfaces: "After reload, the system creates HSR ring interfaces 1 and 2 and activates HSR-HSR mode automatically."[187]

142. **At least two communication rings in an asymmetric layout.** The accused REP network comprises at least two communication rings in an asymmetric layout. Cisco calls a segment whose two edge ports are on the same switch a ring segment: "The segment shown in Figure 53, with both edge ports located on the same switch, is a ring segment."[188] Cisco states that "The upstream switch can be part of multiple REP rings and thereby connected to multiple

---

[185] *IE 4000 Configuration Guide, REP*, *supra* note 181, Configuring REP Interfaces; REP Configuration Guidelines.

[186] *IE 4000 REP Guide, Information About Configuring REP*, *supra* note 182, REP Segment-ID Autodiscovery.

[187] Cisco, *High-Availability Seamless Redundancy (HSR) for IE 4000, IE 4010, and IE 5000*, ch. Configuring HSR, Configuring HSR-HSR (updated Aug. 23, 2019), https://www.cisco.com/c/en/us/td/docs/switches/connectedgrid/cg-switch-sw-master/software/configuration/guide/hsr/b_hsr_ie4k.html (last visited Sept. 19, 2026) [hereinafter *IE 4000 HSR Guide*].

[188] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP, Figure 53.

downstream neighbours,"[189] describes "deploying multiple REP rings from the same REP seed node,"[190] notes that "When operating multiple rings" the segment ID of each ring must be known,[191] and states in its validated design guide that REP "Supports rings, segments, and arbitrary topologies with hierarchy of rings and segments."[192] Because "There is no limit to the number of REP ports on a switch; however, only two ports on a switch can belong to the same REP segment," and the switch "Supports a maximum of 8 segments, with a capacity of 24 devices per segment,"[193] the switches shared between rings hold a port pair in each ring while the remaining switches belong to one ring. Cisco's own configuration example places the primary edge port of segment 1 on a switch that also sends segment topology change notices "to segments 2 through 5."[194] That is the layout the '684 Patent defines as asymmetric: "A ring configuration in which not all nodes are necessarily connected to all rings is referred to as an asymmetric configuration" ('684 Patent at 5:31-34). Cisco's HSR-HSR QuadBox mode likewise joins two rings at nodes that sit on both: "In this mode, two HSR rings are connected through a four-port device called a QuadBox. In this mode, two of the ports on the switch are associated with one HSR ring, and the other two ports are associated with the second HSR ring."[195]

143. **Exactly one of the communication rings is an anchor ring, which is the only ring connected to all the nodes of the plurality of ring nodes.** On information and belief, in the

---

[189] *IE 4000 REP Guide, Information About Configuring REP*, *supra* note 182, REP ZTP Overview.
[190] *IE 4000 REP Guide, Information About Configuring REP*, *supra* note 182, REP Segment-ID Autodiscovery.
[191] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP Segment ID Validation.
[192] *Substation Automation Design Guide v3.2*, *supra* note 183, section Resilient Ethernet Protocol.
[193] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP Configuration Guidelines.
[194] *IE 4000 Configuration Guide, REP*, *supra* note 181, Configuring a Primary Edge Port: Examples.
[195] *IE 4000 HSR Guide*, *supra* note 187, HSR RedBox Modes of Operation.

hierarchical multi-ring REP layouts that Cisco describes and builds, exactly one communication ring is connected to every node of the claimed plurality of ring nodes, and it is the only ring so connected. Cisco states that an upstream switch "can be part of multiple REP rings and thereby connected to multiple downstream neighbours," that REP "Supports rings, segments, and arbitrary topologies with hierarchy of rings and segments," and that "You can construct almost any type of network based on REP segments."[196] In such a hierarchy the plurality of ring nodes is the set of switches on the upper ring, namely the shared switches and every other switch of that ring. The upper ring is connected to each of them, whereas each subordinate ring passes, among those nodes, through the shared switches alone, because only two ports of a switch may belong to a segment and each further segment meets the upper ring only at the switches shared with it. Exactly one ring, the upper ring, is therefore the anchor ring, and it is the only communication ring of the network connected to all the nodes of the plurality; the claim's open transition permits further switches to sit on the subordinate rings. This is the anchor ring of the '684 Patent, the ring common to the ring nodes that "can be used as a common ring" while further rings serve the nodes that carry more traffic ('684 Patent at 5:35-42). On information and belief, operators deployed IE 4000 networks during the term of the '684 Patent in which one REP ring passed through every ring switch of a plant cell or area and further REP rings joined subsets of those switches.

144. **Each communication ring comprising two unidirectional ringlets in mutually-opposite directions.** Each REP ring on the IE 4000 comprises two unidirectional ringlets in mutually opposite directions. Each REP ring is a closed chain of IE 4000 switches joined by point-to-point full-duplex Gigabit Ethernet links: "One REP segment is a chain of ports connected to

---

[196] *IE 4000 REP Guide, Information About Configuring REP*, *supra* note 182, REP ZTP Overview; *Substation Automation Design Guide v3.2*, *supra* note 183, section Resilient Ethernet Protocol; *IE 4000 Configuration Guide, REP*, *supra* note 181, REP.

each other and configured with a segment ID. Each segment consists of standard (non-edge) segment ports and two user-configured edge ports. A switch can have no more than two ports that belong to the same segment, and each segment port can have only one external neighbor."[197] Cisco states that "In full-duplex mode, two stations can send and receive traffic at the same time," and that "Half-duplex mode is not supported on Gigabit Ethernet ports operating at 1000 Mbps."[198] The transmit paths running one way around the ring form one unidirectional ringlet and the transmit paths running the other way form the second. Cisco confirms that a ring segment provides a redundant connection between any two switches in the segment, that is, a path each way around the ring, and that with VLAN load balancing "REP VLAN balancing is achieved by blocking some VLANs at a configured alternate port and all other VLANs at the primary edge port," so that "two ports in the segment control the blocked state of VLANs" and traffic between two switches travels in one direction for one set of VLANs and in the opposite direction for the rest.[199] Cisco describes each HSR ring in the same terms: "HSR defines a ring with traffic in opposite directions. Port-A sends traffic counter clockwise in the ring, and Port-B sends traffic clockwise in the ring."[200] The '684 Patent equates a ringlet with a direction of transmission around the ring, referring to "a direction (i.e., ringlet)" ('684 Patent at 10:20-21) and to a table indexed by ringlet or, equivalently, by ring and east or west direction (*id.* at 8:22-23), builds each ringlet from segments that carry traffic from one node to another (*id.* at 5:15-20), requires no separate physical medium for a ringlet

---

[197] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP.
[198] Cisco, *Cisco Industrial Ethernet 4000, 4010 and 5000 Switch Software Configuration Guide, Cisco IOS Release 15.2(4)EC*, ch. Configuring Interfaces, Configuring Interface Speed and Duplex Mode; Speed and Duplex Configuration Guidelines (updated Sept. 16, 2016), https://www.cisco.com/c/en/us/td/docs/switches/lan/cisco_ie4010/software/release/15-2_4_EC/configuration/guide/scg-ie4010_5000/swint.html (last visited Sept. 19, 2026).
[199] *IE 4000 Configuration Guide, REP*, *supra* note 181, VLAN Load Balancing; REP segment characteristics.
[200] *IE 4000 HSR Guide*, *supra* note 187, Information About HSR.

(*id.* at 5:20-26), and states that its methods "can also be used to construct and operate high capacity network interfaces for shared media, such as Ethernet interfaces" (*id.* at 14:26-33).

145. **Not all the nodes of the plurality of ring nodes are connected to all the communication rings.** Ring membership in the accused network differs from node to node. The '684 Patent defines connection to a ring by "a certain amount of packet processing performed by the node on the packets carried by the ring" ('684 Patent at 5:43-46). The shared IE 4000 switches hold a port pair in each REP ring and bridge the frames of each, while every other switch holds ring ports in a single segment and processes the frames of that ring alone; Cisco's own description of a downstream switch joining one REP ring beneath an upstream switch that "can be part of multiple REP rings" confirms that the downstream node is connected to one ring only.[201] In HSR-HSR mode, each QuadBox processes the frames of both HSR rings while the other nodes of each ring process the frames of that ring only: "On the IE 4000, the first two ports (Gi1/1 and Gi1/2) support HSR ring 1 and the next two ports (Gi1/3 and Gi1/4) support HSR ring 2. All other ports apart from these four ports are shut down."[202]

146. **At least two of the plurality of ring nodes are each connected to at least two of the communication rings.** At least two IE 4000 switches in the accused network are each connected to at least two communication rings. A switch with a port pair in each of two REP segments bridges the frames of both rings and is connected to both in the sense the '684 Patent gives that term; Cisco permits any number of REP ports on a switch, two per segment, in up to eight segments, describes a switch that is "part of multiple REP rings," describes "deploying multiple REP rings from the same REP seed node," and offers a "Resilient dual ring design via 4x

[201] *IE 4000 REP Guide, Information About Configuring REP*, *supra* note 182, REP ZTP Overview.
[202] *IE 4000 HSR Guide*, *supra* note 187, HSR-HSR (QuadBox Mode).

Gigabit Ethernet uplink ports."[203] In the hierarchical layouts that Cisco describes, a subordinate ring is attached to the upper ring at two shared switches so that the attachment survives the loss of either, and each of those two switches is connected to at least two rings, as nodes 24B and 24D of the '684 Patent are connected to rings 28A and 28B ('684 Patent at 5:27-31). Cisco likewise addresses HSR topologies with more than one QuadBox, each connected to both HSR rings: "When the topology has more than one QuadBox, the VLAN and multicast filter configuration must match on all the QuadBoxes."[204]

147. **Accepting a data packet comprising one or more header fields at an ingress ring node.** An IE 4000 on the REP ring accepts Ethernet frames from the devices attached to its access ports and is the ingress ring node for those frames. Every such frame comprises header fields, including the destination MAC address, the source MAC address, and the IEEE 802.1Q VLAN tag. Cisco requires that "REP ports must be Layer 2 trunk ports," recommends that "you create VLANs consistently on all switches in a given segment and configure the same allowed VLANs on the REP trunk ports," and states that "A trunk port configured with IEEE 802.1Q tagging can receive both tagged and untagged traffic."[205] Cisco states that the switch learns the

---

[203] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP Configuration Guidelines; *IE 4000 REP Guide, Information About Configuring REP*, *supra* note 182, REP ZTP Overview; REP Segment-ID Autodiscovery; *IE 4000 Data Sheet*, *supra* note 180, Table 1.

[204] *IE 4000 HSR Guide*, *supra* note 187, Guidelines and Limitations, HSR-HSR QuadBox Mode.

[205] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP Configuration Guidelines; Fast Convergence; Cisco, *Cisco Industrial Ethernet 4000, 4010 and 5000 Switch Software Configuration Guide, Cisco IOS Release 15.2(4)EC*, ch. Configuring VLANs, Native VLAN for Untagged Traffic (updated Sept. 16, 2016), https://www.cisco.com/c/en/us/td/docs/switches/lan/cisco_ie4010/software/release/15-2_4_EC/configuration/guide/scg-ie4010_5000/swvlan.html (last visited Sept. 19, 2026).

source address of the packets it receives on each port and forwards on the destination address, which confirms that the switch reads those header fields from each frame it accepts.[206]

148. **Determining an egress ring node to which the data packet is to be forwarded by the ingress ring node.** The ingress IE 4000 determines the egress ring node to which each frame is to be forwarded. Cisco states that "The switch provides dynamic addressing by learning the source address of packets it receives on each port and adding the address and its associated port number to the address table. As stations are added or removed from the network, the switch updates the address table, adding new dynamic addresses and aging out those that are not in use," that "The address table lists the destination MAC address, the associated VLAN ID, and port number associated with the address and the type (static or dynamic)," and that "The switch sends packets between any combination of ports, based on the destination address of the received packet."[207] Because each destination device sits behind one switch of the ring, the learned entry for its MAC address directs the frame along the ring to that switch, where the frame leaves the ring network; that switch is the egress ring node, which the '684 Patent defines as the node through which the packet leaves the ring network ('684 Patent at 4:61-64) and determines from a MAC table whose associations are "learned and updated in an adaptive manner" (*id.* at 8:36-45).

149. **Identifying a subset of the communication rings comprising one or more common communication rings connected to both the ingress and egress ring nodes.** On

[206] Cisco, *Cisco Industrial Ethernet 4000, 4010 and 5000 Switch Software Configuration Guide, Cisco IOS Release 15.2(4)EC*, ch. Performing Switch Administration, Address Table (updated Sept. 16, 2016), https://www.cisco.com/c/en/us/td/docs/switches/lan/cisco_ie4010/software/release/15-2_4_EC/configuration/guide/scg-ie4010_5000/swadmin.html (last visited Sept. 19, 2026) [hereinafter *IE 4000 Configuration Guide, Switch Administration*].

[207] *IE 4000 Configuration Guide, Switch Administration*, *supra* note 206, Address Table; MAC Address Table.

information and belief, an IE 4000 that participates in more than one REP segment resolves, for each frame it forwards, which segment reaches the destination, and in doing so identifies the ring or rings common to itself and the egress node. Cisco states that a switch "can have no more than two ports that belong to the same segment, and each segment port can have only one external neighbor," so every ring port belongs to exactly one ring; that the switch holds topology information for a segment or for all segments ("Displays REP topology information for a segment or for all segments, including the primary and secondary edge ports in the segment"), built from Edge Port Advertisement packets ("The show rep topology output relies on a database built using Edge Port Advertisement (EPA) packets. Each node in the ring is expected to receive two EPA packets, one each from the Primary and Secondary edge ports"); and that the address table associates each destination MAC address and VLAN with a port.[208] When the ingress switch resolves a frame's destination to a ring port, it has resolved the frame to the one segment whose ports lead to the egress switch, which is a ring connected to both nodes, and where two shared switches join the same pair of rings the forwarding entries identify each common ring through which the egress switch is reached. The claim requires one or more common rings, so a subset of one suffices ('684 Patent at 9:18-23).

150. **Selecting, responsively to a value of a header field of the packet, a ringlet of a common communication ring.** The ingress IE 4000 selects the direction in which a frame travels around the common REP ring according to the frame's IEEE 802.1Q VLAN ID, which is a header

[208] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP; Monitoring and Maintaining REP; Cisco, *Configuring Resilient Ethernet Protocol for IE 4000, IE 4010, and IE 5000 Switches*, ch. Monitoring and Maintaining REP, Investigating Broken Links (updated June 11, 2024), https://www.cisco.com/c/en/us/td/docs/switches/lan/industrial/software/configuration/guide/b-configuring-resilient-ethernet-protocol/m-monitoring-and-maintaining-rep.html (last visited Sept. 19, 2026); *IE 4000 Configuration Guide, Switch Administration*, *supra* note 206, MAC Address Table.

field. Cisco states that "REP VLAN balancing is achieved by blocking some VLANs at a configured alternate port and all other VLANs at the primary edge port," that with VLAN load balancing "two ports in the segment control the blocked state of VLANs," and that "Each VLAN maintains its own logical address table. A known address in one VLAN is unknown in another until it is learned or statically associated with a port in the other VLAN."[209] In Cisco's own worked example, entered as "Switch (conf-if)# rep block port 4 vlan 100-200," "The alternate port is the neighbor with neighbor offset number 4. After manual preemption, VLANs 100 to 200 are blocked at this port, and all other VLANs are blocked at the primary edge port E1 (Gigabit Ethernet port 1/0/1)."[210] Once load balancing is triggered by the rep preempt segment command, which "Manually triggers VLAN load balancing on the segment," or by the configured preempt delay, "the primary edge port sends out a message to alert all interfaces in the segment about the preemption. When the secondary port receives the message, it is reflected into the network to notify the alternate port to block the set of VLANs specified in the message and to notify the primary edge port to block the remaining VLANs."[211] For an ingress switch and an egress switch lying on either side of the two blocking points, a frame whose VLAN ID is in the first set is sent out one ring port and travels one way around the ring, and a frame in any other VLAN is sent out the other ring port and travels the opposite way. The ingress switch thus selects one of the two ringlets of the common ring responsively to the value of the VLAN ID in the frame's header. The '684 Patent describes the step as selecting "the east or west direction" for forwarding the packet ('684 Patent

---

[209] *IE 4000 Configuration Guide, REP*, *supra* note 181, VLAN Load Balancing; REP segment characteristics; *IE 4000 Configuration Guide, Switch Administration*, *supra* note 206, MAC Addresses and VLANs.
[210] *IE 4000 Configuration Guide, REP*, *supra* note 181, Configuring VLAN Blocking: Example.
[211] *IE 4000 Configuration Guide, REP*, *supra* note 181, Setting Manual Preemption for VLAN Load Balancing; VLAN Load Balancing.

at 9:64-67), permits the direction to be pre-configured per connection and stored in a table (*id.* at 10:1-6), associates packets with a connection by header values or by VLAN (*id.* at 9:1-5), and allows the preferred ringlet to follow "any other operator-defined criterion" (*id.* at 13:15-17).

151. **Forwarding the data packet from the ingress ring node to the egress ring node over the selected ringlet.** The frame is forwarded from the ingress IE 4000 to the egress IE 4000 over the selected ringlet. Cisco states that when a REP segment settles, "one blocked port remains in the alternate role and all other ports become open ports," that under VLAN load balancing "two ports in the segment control the blocked state of VLANs," and that "Using the MAC address table, the switch forwards the packet only to the port associated with the destination address."[212] The ingress switch therefore transmits the frame on the ring port of the direction selected for its VLAN, and every intervening switch, whose ring ports are open for that VLAN, passes the frame from one ring port to the other in the same direction until it reaches the egress switch, where it leaves the ring network. This is the forwarding step of the '684 Patent, in which the packet is sent "in the selected direction (ringlet) of the selected member (ring)" to the egress node ('684 Patent at 10:16-19), with each intermediate node passing transit packets to the next neighbor in the ring (*id.* at 6:47-50).

152. **HSR-HSR configurations.** The HSR-HSR configurations of the Accused '684 Products practice claim 1 as well. Each HSR ring is a communication ring of two unidirectional ringlets in mutually opposite directions: "HSR defines a ring with traffic in opposite directions. Port-A sends traffic counter clockwise in the ring, and Port-B sends traffic clockwise in the ring."[213] Where two HSR rings are joined by two QuadBoxes, a topology for which Cisco directs

---

[212] *IE 4000 Configuration Guide, REP*, *supra* note 181, REP Ports; REP segment characteristics; *IE 4000 Configuration Guide, Switch Administration*, *supra* note 206, Address Table.
[213] *IE 4000 HSR Guide*, *supra* note 187, Information About HSR.

that "the VLAN and multicast filter configuration must match on all the QuadBoxes,"[214] the rings form the claimed asymmetric layout: the switches of the first ring are the claimed plurality of ring nodes, the first ring is connected to every one of them and is the anchor ring, and the second ring is connected, among those nodes, only to the two QuadBoxes, each of which is connected to both rings. On information and belief, operators deployed IE 4000 switches during the term of the '684 Patent in HSR-HSR topologies with two or more QuadBoxes. An ingress switch on the anchor ring accepts Ethernet frames carrying destination MAC address and IEEE 802.1Q VLAN header fields, determines the egress ring node through the learned address-table entry for the destination MAC address as alleged above for REP rings, and, responsively to those header values, selects the ringlets of the common ring on which the frame is sent; a QuadBox likewise passes a frame onto the ringlets of the other ring only as its VLAN and multicast filter configuration, applied to the VLAN ID and destination address in the frame's header, directs. The frame then travels to the egress switch over the selected ringlet. That HSR also sends a duplicate of each frame over the opposite ringlet does not avoid claim 1. Claim 1 recites selecting "a ringlet" and forwarding "over the selected ringlet"; it does not recite selecting only one ringlet or refraining from transmission on another, and where claim 1 requires a single element it says so, as in "exactly one of which communication rings is an anchor ring." In any event, on information and belief, the egress switch of an HSR ring accepts the first copy of a frame to arrive and discards the duplicate, so that each frame is delivered to the egress switch over one ringlet.

153. To the extent any limitation of claim 1 of the '684 Patent is found not to be literally present in the method performed with the Accused '684 Products, that limitation is present under the doctrine of equivalents, because the corresponding step performs substantially the same

---

[214] *IE 4000 HSR Guide*, *supra* note 187, Guidelines and Limitations, HSR-HSR QuadBox Mode.

function, in substantially the same way, to achieve substantially the same result as the claimed step, and differs from it, if at all, only insubstantially from the perspective of a person of ordinary skill in the art. By way of example, a closed ring of Ethernet switches joined by full-duplex links, each with two ring ports, performs substantially the same function as a ring of two counter-rotating ringlets, providing two opposite transmission paths between any pair of ring nodes for load distribution and protection; in substantially the same way, by a separate transmit path for each direction on every link between neighboring nodes with each node passing transit frames from one ring port to the other; to achieve substantially the same result, that a packet reaches the egress node in the chosen direction while the opposite direction remains available. Likewise, REP VLAN load balancing, which maps the value of the IEEE 802.1Q VLAN ID header field to one of the two directions around the ring through the two blocking points, is interchangeable with the per-connection default direction of the '684 Patent ('684 Patent at 10:1-6), and hop-by-hop bridging in one direction around a ring is interchangeable with the transit forwarding of the described embodiment (*id.* at 6:47-50, 14:26-33).

154. Cisco, under 35 U.S.C. § 271(b), induced third parties, including industrial operators, utilities, enterprise customers, and network operators in this District and throughout the United States, to directly infringe at least claim 1 of the '684 Patent during its term by performing the claimed method with the Accused '684 Products. Cisco instructed its customers to build and run the accused configurations. Cisco's Industrial Ethernet 4000, 4010 and 5000 Switch Software Configuration Guide sets out the procedure "Configuring REP Interfaces," including the rep block port command that "Configures VLAN load balancing on the primary edge port, identify [*sic*] the REP alternate port in one of three ways, and configure the VLANs to be blocked on the alternate

port," and a worked VLAN blocking example.[215] Cisco's Configuring Resilient Ethernet Protocol guide for the IE 4000 describes deploying multiple REP rings from the same REP seed node and an upstream switch that is part of multiple REP rings.[216] Cisco's Substation Automation design guide promotes REP for "arbitrary topologies with hierarchy of rings and segments,"[217] and Cisco's data sheet promotes the IE 4000 as delivering "multiple rings, redundant ring topology."[218] Cisco's HSR guide sets out the procedure "Configuring HSR-HSR" and directs that where the topology has more than one QuadBox the VLAN allowed list and multicast filters be the same on both QuadBoxes.[219] Cisco has been aware of the disclosure of the '684 Patent since no later than October 28, 2014, when the USPTO examiner cited its published application during the prosecution of Cisco's own application, and, on information and belief, has had actual knowledge of the '684 Patent since no later than March 2017 through the notice given by Plaintiff's predecessor in interest. With that knowledge, and knowing or being willfully blind to the fact that the acts it instructed constitute infringement, Cisco continued through the term of the '684 Patent to publish those instructions, to sell the IE 4000 switches and deliver the Cisco IOS software that performs REP VLAN load balancing, and to support customers in deploying multi-ring REP networks, with the specific intent that its customers perform the claimed method.

155. Cisco, under 35 U.S.C. § 271(c), contributorily infringed at least claim 1 of the '684 Patent during its term. With knowledge of the '684 Patent, Cisco sold, offered for sale, and imported into the United States the IE 4000 switches and the Cisco IOS software images containing

---

[215] *IE 4000 Configuration Guide, REP*, *supra* note 181, Configuring REP Interfaces, Step 6; Configuring VLAN Blocking: Example.
[216] *IE 4000 REP Guide, Information About Configuring REP*, *supra* note 182.
[217] *Substation Automation Design Guide v3.2*, *supra* note 183, section Resilient Ethernet Protocol.
[218] *IE 4000 Data Sheet*, *supra* note 180, Table 1.
[219] *IE 4000 HSR Guide*, *supra* note 187, Configuring HSR-HSR.

the REP, REP VLAN load balancing, REP Segment-ID Autodiscovery, and HSR-HSR program instructions, which constitute a material part of the claimed method, are especially made and especially adapted for building and operating multi-ring networks in which frames are steered around a common ring in a direction selected by their VLAN, and are not staple articles or commodities of commerce suitable for substantial noninfringing use. Cisco's customers directly infringed when they used those components as Cisco intended.

156. On information and belief, Cisco's customers directly infringed claim 1 of the '684 Patent during its term when, following Cisco's instructions, they configured and operated IE 4000 switches in multiple REP rings with VLAN load balancing in the United States, including in this District.

157. Alternatively, during the term of the '684 Patent, Cisco knew that there was a high probability that the sale, support, and use of the Accused '684 Products constituted infringement of the '684 Patent, and took deliberate actions to avoid learning of those facts.

158. Cisco's infringement of the '684 Patent was willful from the time Cisco obtained knowledge of the '684 Patent through the expiration of the '684 Patent on March 2, 2026. Cisco's knowledge includes, on information and belief, the March 2017 notice given by Plaintiff's predecessor in interest, and Cisco's awareness of the '684 Patent's disclosure dates from no later than October 28, 2014. Such willful conduct during the term of the '684 Patent merits enhanced damages under 35 U.S.C. § 284.

159. Cisco's acts of direct, induced, and contributory infringement of the '684 Patent occurred in the United States, including in this District, during the term of the '684 Patent, and injured and damaged Plaintiff. Because the '684 Patent has expired, Plaintiff does not seek injunctive relief with respect to the '684 Patent. Plaintiff has suffered damages as a result of

Cisco's infringement of the '684 Patent during its term, and Cisco is liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for that infringement, but in no event less than a reasonable royalty, together with interest and costs.

## COUNT VI
## INFRINGEMENT OF U.S. PATENT NO. 6,731,607

160. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

161. Claim 12 of the '607 Patent recites:

> 12. A method for providing access to a high-speed network, comprising:
>
> coupling a switching unit to interface with the network in accordance with operating configuration parameters stored in the switching unit;
>
> linking one or more line cards to communicate with the network through the switching unit, each line card comprising one or more ports to respective subscriber lines;
>
> storing backup configuration parameters in at least one of the line cards; and
>
> upon a start-up of the switching unit, receiving the backup configuration parameters from the at least one of the line cards and, responsive to the received backup parameters, updating the operating configuration parameters.

162. The Accused '607 Products are Cisco Catalyst 9300 Series and Catalyst 9300X Series switches cabled into a StackWise stack and running Cisco IOS XE, using the Cisco IOS XE Stack Manager configuration synchronization and stateful switchover functions. Cisco describes the Catalyst 9300 Series as "Cisco's lead stackable enterprise access switching platform," states that the switches "are designed for stacking as a single virtual switch, enabling customers to have a single management plane and control plane for up to 448 access ports," and offers "Flexible and

dense uplink offerings with 100G, 40G, 25G, Multigigabit, 10G, and 1G as fixed or modular uplinks."[220] Cisco states that "A switch stack can have up to eight stacking-capable switches connected through their StackWise-480 ports. The stack members work together as a unified system. Layer 2 and Layer 3 protocols present the entire switch stack as a single entity to the network."[221]

163. The '607 Patent expired on October 19, 2022. Cisco made, sold, offered for sale, imported, and supported the Catalyst 9300 Series in the United States, and published the Cisco IOS XE releases and the stacking documentation cited in this Count, throughout the period from six years before the filing of this Complaint through October 19, 2022, and Cisco's IOS XE 16.5.1a Stack Manager guide, dated June 15, 2017, and its IOS XE 17.9.x Stacking and High Availability guide, dated August 1, 2022, bracket the software releases in use during that period.[222]

164. Cisco, under 35 U.S.C. § 271(a), directly infringed at least claim 12 of the '607 Patent, literally or under the doctrine of equivalents, during its term. Claim 12 is a method claim, and every step is carried out by the IOS XE software of the stack once the switches are cabled through their stack ports and powered on: stateful switchover between the active switch and the standby switch "is enabled by default when Cisco Catalyst 9300 Series Switches are deployed in

---

[220] *Catalyst 9300 Data Sheet*, *supra* note 81, Product overview; Stacking.

[221] Cisco, *Stack Manager and High Availability Configuration Guide, Cisco IOS XE Everest 16.5.1a (Catalyst 9300 Switches)*, ch. Managing Switch Stacks, Switch Stack Overview (updated June 15, 2017), https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/16-5/configuration_guide/stck_mgr_ha/b_165_stck_mgr_ha_9300_cg/managing_switch_stacks.html (last visited Sept. 19, 2026) [hereinafter *IOS XE 16.5.1a Stack Manager Guide*].

[222] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221; Cisco, *Stacking and High Availability Configuration Guide, Cisco IOS XE Cupertino 17.9.x (Catalyst 9300 Switches)*, ch. Managing Switch Stacks (updated Aug. 1, 2022), https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-9/configuration_guide/stck_mgr_ha/b_179_stck_mgr_ha_9300_cg/managing_switch_stacks.html (last visited Sept. 19, 2026) [hereinafter *IOS XE 17.9.x Stacking Guide*].

StackWise-480/320 mode. No additional user intervention is required to enable the SSO capability on a Cisco Catalyst 9300 Series system,"[223] and the synchronization of the running configuration to the standby switch is automatic. The party that operates the stack therefore performs every step, and no step is divided between parties. Through October 19, 2022, Cisco performed the method in the United States each time it operated Catalyst 9300 stacks in its development laboratories and in its test, demonstration, validation, and technical support networks: Cisco's StackWise white paper reproduces console output and Stack Manager log messages from a four-switch Catalyst 9300 stack with one active, one standby, and two member switches, including the message "%STACKMGR-6-SWITCH_ADDED: Switch 2 R0/0: stack_mgr: Switch 4 has been added to the stack."[224] That stack is one that Cisco itself assembled and operated, and Cisco's IOS XE 16.5.1a Stack Manager guide documents the accused synchronization as a released feature that Cisco built and tested. Cisco's customers also performed the method each time they operated such a stack in the United States during the term of the '607 Patent.

165. The Accused '607 Products, and the method by which they operate, satisfy every limitation of claim 12 of the '607 Patent, as set forth below.

166. **A method for providing access to a high-speed network.** Operating a Catalyst 9300 StackWise stack is a method for providing access to a high-speed network. The stack presents up to 448 access ports to the enterprise network "as a single entity" through 1G to 100G uplinks.[225]

167. **Coupling a switching unit to interface with the network in accordance with operating configuration parameters stored in the switching unit.** The active switch of the stack

[223] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Implementing StackWise-1T/480/320 NSF/SSO.
[224] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Auto-upgrade, Stack logs.
[225] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Overview; *Catalyst 9300 Data Sheet*, *supra* note 81, Product overview.

is a switching unit coupled to interface with the network in accordance with operating configuration parameters stored in it. Cisco states that "The active switch controls the operation of the switch stack, and is the single point of stack-wide management," and that "The active switch contains the saved and running configuration files for the switch stack. The configuration files include the system-level settings for the switch stack and the interface-level settings for each stack member."[226] Those files are stored in the active switch: "On all platforms except the Class A Flash file system platforms, the startup configuration is stored in nonvolatile random-access memory (NVRAM)," and "The running configuration is stored in RAM."[227] IOS XE parses the startup configuration at boot: "Commands are parsed (translated and executed) by the Cisco IOS software when the system is booted (from the startup-config file) or when you enter commands at the CLI in a configuration mode," and "Startup configuration files (startup-config) are used during system startup to configure the software. Running configuration files (running-config) contain the current configuration of the software."[228] The active switch then runs the stack's control plane toward the network under those settings: "the IOS daemon (IOSd) process on the ACTIVE switch centrally manages all management-plane and network-control-plane operations with Layer 2 and Layer 3 protocols, including Spanning Tree Protocol (STP), IP routing, Cisco Express Forwarding, Policy-

---

[226] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Overview.

[227] Cisco, *System Management Configuration Guide, Cisco IOS XE Dublin 17.11.x (Catalyst 9300 Switches)*, ch. Managing Configuration Files, Location of Configuration Files (updated Mar. 28, 2023), https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-11/configuration_guide/sys_mgmt/b_1711_sys_mgmt_9300_cg/managing_configuration_files.html (last visited Sept. 19, 2026) [hereinafter *IOS XE 17.11.x System Management Guide*]; Cisco, *System Management Configuration Guide, Cisco IOS XE Amsterdam 17.3.x (Catalyst 9300 Switches)*, ch. Managing Configuration Files, Location of Configuration Files (updated Nov. 7, 2020), https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-3/configuration_guide/sys_mgmt/b_173_sys_mgmt_9300_cg/managing_configuration_files.html (last visited Sept. 19, 2026).

[228] *IOS XE 17.11.x System Management Guide*, *supra* note 227, Types of Configuration Files.

Based Routing (PBR), and others."[229] The active switch performs the role of the switching unit of the '607 Patent, which "links the shelf to the network trunk" and "multiplexes the network connection among the line cards" ('607 Patent at 1:39-42), and whose controller configures the interfaces based on configuration parameters stored in a non-volatile memory (*id.* at 5:7-10). The claim calls for coupling in accordance with parameters stored in the switching unit; it does not recite the chassis on which a physical uplink port sits, and every uplink of the stack operates under the interface-level settings held in the configuration files of the active switch and under the control plane the active switch runs.

168. **Linking one or more line cards to communicate with the network through the switching unit.** The standby switch and the member switches of the stack are line cards linked to communicate with the network through the active switch. Each is a unit with 24 or 48 access ports, its own controller, and its own memory ("x86 CPU complex with 8 GB memory, 16 GB of flash"),[230] connected to the active switch over the StackWise ring, which Cisco describes as "The high-speed backplane of the Cisco Catalyst 9300 Series stack-ring fabric."[231] Cisco states that "the ACTIVE switch communicates with the rest of the multilayer or routed access infrastructure to dynamically develop the forwarding tables. The ACTIVE switch also updates all member switches for forwarding information," that "The forwarding architecture is designed to provide distributed switching across all member switches in the stack, as implemented in distributed, modular Cisco platforms,"[232] and that "You manage the switch stack and the stack member interfaces through the active switch. You can use the CLI, SNMP, and supported network management applications such

[229] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Distributed forwarding architecture.
[230] *Catalyst 9300 Data Sheet*, *supra* note 81, Product highlights.
[231] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Ring architecture.
[232] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Distributed forwarding architecture.

as CiscoWorks. You cannot manage stack members on an individual Device basis."[233] The access ports of every member therefore reach the network as part of one system whose control plane, forwarding state, and management originate in the switching unit, which is communication through the switching unit. The '607 Patent's line card "comprises a plurality of ports 52 serving respective subscriber premises" and has its own controller coupled to its own memory ('607 Patent at 5:23-27), and the '607 Patent states that "it is not even necessary that the switching unit and line cards physically occupy a common shelf in an electronic rack, but only that they have the appropriate controllers, memory, and power and data connections to be able to carry out the methods of the present invention" (*id.* at 7:26-31). Stackable chassis joined by stack cables meet that description.

169. **Each line card comprising one or more ports to respective subscriber lines.** Each stack member that serves as a line card comprises one or more ports to respective subscriber lines. Cisco's data sheet lists every Catalyst 9300 model by its complement of 24 or 48 access ports, for example "24 ports data" for the C9300-24T and "48 ports PoE+ ENERGY STAR certified" for the C9300-48P2,[234] and each access port connects over its own cable to the end system that it serves, so each port has a respective subscriber line. The '607 Patent describes line card ports functionally as ports that "serve network subscribers" ('607 Patent at 1:38-39), applies the invention to "substantially any type of network and any multi-card network access system" (*id.* at 7:20-22), and adds in dependent claim 13 that "the ports comprise Digital Subscriber Line ports," so claim 12 is not limited to DSL lines.

[233] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Management Connectivity.
[234] *Catalyst 9300 Data Sheet*, *supra* note 81, Table 2.

170. **Storing backup configuration parameters in at least one of the line cards.** The stack stores backup configuration parameters in the standby switch and the member switches. Cisco uses the claim's own term: "The active switch contains the saved and running configuration files for the switch stack. The configuration files include the system-level settings for the switch stack and the interface-level settings for each stack member. Each stack member has a current copy of these files for back-up purposes."[235] The storing is performed in two ways: "The active switch has the saved and running configuration file for the switch stack. The standby switch automatically receives the synchronized running configuration file. Stack members receive synchronized copies when the running configuration file is saved into the startup configuration file. If the active switch becomes unavailable, the standby switch takes over with the current running configuration."[236] Cisco adds that "When a standby device runs in SSO mode, the standby device starts up in a fully-initialized state and synchronizes with the persistent configuration and the running configuration on the active device."[237] Those copies are the claimed backup configuration parameters, held in the line cards against loss of the active switch, as the '607 Patent's line cards hold the switching unit's configuration: "The configuration parameters set in the non-volatile memory of the

[235] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Overview; Cisco, *Stacking and High Availability Configuration Guide, Cisco IOS XE Dublin 17.11.x (Catalyst 9300 Switches)*, ch. Managing Switch Stacks, Switch Stack Overview (updated Mar. 28, 2023), https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-11/configuration_guide/stck_mgr_ha/b_1711_stck_mgr_ha_9300_cg/managing_switch_stacks.html (last visited Sept. 19, 2026).

[236] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Configuration Files.

[237] Cisco, *Stacking and High Availability Configuration Guide, Cisco IOS XE Amsterdam 17.3.x (Catalyst 9300 Switches)*, ch. Configuring Nonstop Forwarding with Stateful Switchover, SSO Operation (updated Aug. 2, 2020), https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-3/configuration_guide/stck_mgr_ha/b_173_stck_mgr_ha_9300_cg/configuring_nsf_with_sso.html (last visited Sept. 19, 2026) [hereinafter *IOS XE 17.3.x Stacking Guide, Configuring NSF with SSO*].

switching unit are backed up in the RAM of the line cards" ('607 Patent at 2:30-32), where they "are available to be used in a subsequent start-up when master unit 28 is replaced or repaired" (*id.* at 5:46-48). Cisco's own note confirms the purpose: "The interface-specific settings of the active switch are saved if the active switch is replaced without saving the running configuration to the startup configuration."[238] Claim 12 calls for storing "in at least one of the line cards" and does not specify a type of memory; volatile memory is added only by dependent claim 17.

171. **Upon a start-up of the switching unit.** A switching unit starts up in a Catalyst 9300 stack when a stack member enters service as the active switch after the prior active switch becomes unavailable, while the other stack members keep running. Cisco states that "All stack members are eligible to be the active switch or the standby switch. If the active switch becomes unavailable, the standby switch becomes the active switch," that "After election, the new active switch becomes available after a few seconds. In the meantime, the switch stack uses the forwarding tables in memory to minimize network disruption. The physical interfaces on the other available stack members are not affected during a new active switch election and reset," and that "The standby switch becomes the new active switch. All other member switches in the stack remain as member switches and do not reboot."[239] Cisco describes the standby device in SSO mode as one that "starts up in a fully-initialized state," and states that "If the active device fails, the standby device becomes the active device. This new active device uses existing Layer 2 switching

---

[238] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Configuration Files, Note.

[239] Cisco, *Stacking and High Availability Configuration Guide, Cisco IOS XE Bengaluru 17.6.x (Catalyst 9300 Switches)*, ch. Managing Switch Stacks, Active and Standby Switch Election and Reelection; Switch Stack Configuration Scenarios, https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-6/configuration_guide/stck_mgr_ha/b_176_stck_mgr_ha_9300_cg.pdf (last visited Sept. 21, 2026) [hereinafter *IOS XE 17.6.x Stacking Guide*].

information to continue forwarding traffic. Layer 3 forwarding is delayed until routing tables are repopulated in the newly active device."[240] The stack's control plane thus begins service on a new unit while the line cards remain powered, which is the start-up of a replacement switching unit that the '607 Patent describes: a system that "automatically configures itself upon start-up or replacement of components" ('607 Patent at 2:3-5), in which "the new switching unit automatically copies the backup configuration parameters" (*id.* at 2:32-35) while the line cards "remained under power" (*id.* at 6:63-65) and "without powering down system 20 or shelf 26" (*id.* at 7:10-13). The claim identifies "the switching unit" by its role in the system, not by the identity of a chassis. A switching unit likewise starts up on a stack power-on or reset, when the members boot and the elected switch starts as the active switch.

172. **Receiving the backup configuration parameters from the at least one of the line cards.** Cisco treats the active switch as a role that passes among the stack members, not as a fixed chassis: "All stack members are eligible to be the active switch or the standby switch."[241] The claimed switching unit is the unit performing the switching-unit role, and the claimed line cards are the units performing the line-card role; the '607 Patent identifies each by the functions it performs and states that their physical arrangement is immaterial ('607 Patent at 7:26-31). When the active role passes, the switching-unit function starts up in the unit that assumes that role, and the configuration it receives comes from the store that a line card kept "for back-up purposes" while serving in the line-card role, just as the '607 Patent's new switching unit receives the parameters backed up in the line cards (*id.* at 2:32-35). Cisco itself describes the stack's architecture by reference to "distributed, modular Cisco platforms," in which the switching-unit

[240] *IOS XE 17.3.x Stacking Guide, Configuring NSF with SSO*, *supra* note 237, SSO Operation.
[241] *IOS XE 17.6.x Stacking Guide*, *supra* note 239, Active and Standby Switch Election and Reelection.

and line-card functions reside in separate units.[242] On information and belief, the unit that enters service as the active switch takes up the backup copy of the stack configuration that the members stored while serving as line cards. Cisco states that "If the active switch becomes unavailable, the standby switch assumes the role of the active switch, and continues to the keep [*sic*] the stack operational,"[243] that the standby switch "takes over with the current running configuration,"[244] and that "The interface-specific settings of the active switch are saved if the active switch is replaced without saving the running configuration to the startup configuration."[245] Settings that were never written to the startup configuration of the replaced active switch existed in only two places, the running configuration of that switch and the synchronized copy stored in another stack member; because those settings are saved after the replacement, the configuration with which the new switching unit operates is the copy that came from the stack member. The parameters therefore come from a line card store, not from the unavailable switch and not from an operator. On a stack power-on or reset, when a switch that had been serving as a stack member is elected active, it configures itself from its own startup configuration ("Startup configuration files (startup-config) are used during system startup to configure the software"),[246] and that file is the synchronized copy it stored "for back-up purposes" while it served as a line card. The claim identifies the switching unit and the line cards by the roles they perform; in the '607 Patent's own embodiment the switching unit that receives the parameters is a different physical unit from the switching unit whose parameters were stored ('607 Patent at 2:32-35, 7:10-17), and the '607 Patent places no

---

[242] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Overview; *Catalyst 9300 StackWise White Paper*, *supra* note 84, Distributed forwarding architecture.
[243] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Overview.
[244] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Configuration Files.
[245] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Configuration Files, Note; *IOS XE 17.9.x Stacking Guide*, *supra* note 222, Switch Stack Configuration Files, Note.
[246] *IOS XE 17.11.x System Management Guide*, *supra* note 227, Types of Configuration Files.

limit on the physical arrangement of the units (*id.* at 7:26-31). A stack member that stores the backup copy while serving as a line card, and whose control processor then enters service as the switching unit with that copy, performs the claimed receipt: the source of the parameters is the line card store, and the recipient is the switching unit.

173. **Responsive to the received backup parameters, updating the operating configuration parameters.** On information and belief, upon the takeover the operating configuration parameters of the switching unit, formerly the files held in the departed active switch, become the backup parameters taken up from the line card store. Cisco states that the standby switch "takes over with the current running configuration" and "continues to the keep [*sic*] the stack operational," that the newly active device "uses existing Layer 2 switching information to continue forwarding traffic" while "routing tables are repopulated in the newly active device," and that the interface-specific settings of a replaced active switch "are saved" even when never written to its startup configuration.[247] The new active switch thus runs the management plane and the Layer 2 and Layer 3 control functions of the stack under the preserved backup copy, including the most recent unsaved settings, in preference to the older saved startup configuration and without entry by an operator, as the '607 Patent's controller "assumes the parameters received from RAM 56 to be more recent than its own" and adopts them ('607 Patent at 7:3-6). On a stack power-on or reset, IOS XE parses the startup configuration of the elected former stack member, the synchronized copy, "when the system is booted," and the result becomes its running configuration, "the current configuration of the software."[248] Cisco's stacking guide states that "The startup

---

[247] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221, Switch Stack Overview; Switch Stack Configuration Files; *IOS XE 17.3.x Stacking Guide, Configuring NSF with SSO*, *supra* note 237, SSO Operation.

[248] *IOS XE 17.11.x System Management Guide*, *supra* note 227, Types of Configuration Files.

configuration file ensures that the switch stack can reload and can use the saved information whether or not the provisioned switch is part of the switch stack."[249] The switching unit's operating configuration is thereby determined by the received backup parameters, which is the claimed updating; claim 12, unlike dependent claim 18, requires no write to non-volatile memory. The result in both cases is the result the '607 Patent describes: "the configuration of the shelf is maintained, generally without the need for service personnel to enter new configuration settings" ('607 Patent at 2:35-38).

174. To the extent any limitation of claim 12 of the '607 Patent is found not to be literally present in the method performed by the Accused '607 Products, that limitation is present under the doctrine of equivalents, because the corresponding step performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed step, and differs from it, if at all, only insubstantially from the perspective of a person of ordinary skill in the art. By way of example, the takeover by which a stack member enters service as the active switch with the synchronized copy of the stack configuration performs substantially the same function as the claimed receipt of backup parameters upon start-up of the switching unit, supplying a switching unit that is starting up with the preserved configuration of the system from a store outside the switching unit that was lost, without entry by an operator; in substantially the same way, by taking the parameters from the copy that was stored in a port-bearing unit of the system while the earlier switching unit was in service; to achieve substantially the same result, that the

[249] Cisco, *Stacking and High Availability Configuration Guide, Cisco IOS XE Amsterdam 17.3.x (Catalyst 9300 Switches)*, ch. Managing Switch Stacks, Offline Configuration to Provision a Stack Member (updated Aug. 2, 2020), https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-3/configuration_guide/stck_mgr_ha/b_173_stck_mgr_ha_9300_cg/managing_switch_stacks.html (last visited Sept. 19, 2026).

new switching unit holds the configuration of the system as it stood before the loss. That the control processor of the new switching unit sits in the same chassis as the store, so that the parameters are read from local memory rather than returned across a shelf backplane in answer to a request, is an insubstantial difference: the ’607 Patent states that the physical arrangement of the units is immaterial, requiring “only that they have the appropriate controllers, memory, and power and data connections” (’607 Patent at 7:26-31), and a person of ordinary skill would view reading a stored copy from local memory and reading it over an internal link as interchangeable ways of obtaining the same parameters. Likewise, holding the adopted parameters as the running configuration, instead of first writing them over a copy in Flash ROM as the described embodiment does (*id.* at 7:1-6), is an insubstantial difference for claim 12, which, unlike claim 18, does not call for a write to non-volatile memory.

175. Cisco, under 35 U.S.C. § 271(b), induced third parties, including enterprise customers and network operators in this District and throughout the United States, to directly infringe at least claim 12 of the ’607 Patent during its term by performing the claimed method with the Accused ’607 Products. Cisco instructed its customers to perform the method. Cisco’s Stack Manager and High Availability Configuration Guide for IOS XE 16.5.1a and the Stacking and High Availability Configuration Guides for the IOS XE releases that followed it through the expiration of the ’607 Patent tell customers how to connect up to eight switches through their StackWise ports, how to manage the stack through the active switch, and how to save the running configuration to the startup configuration, and they describe what the stack does when the active switch fails, is removed, or is replaced.[250] Cisco’s StackWise white paper recommends that

[250] *IOS XE 16.5.1a Stack Manager Guide*, *supra* note 221; *IOS XE 17.9.x Stacking Guide*, *supra* note 222.

customers set switch priorities so that a chosen switch takes the active role and another takes the standby role.[251] A customer that followed those instructions performed every step of claim 12. On information and belief, Cisco has had actual knowledge of the ’607 Patent since no later than March 2017 through the notice given by Plaintiff’s predecessor in interest. With that knowledge, and knowing or being willfully blind to the fact that the acts it instructed constitute infringement, Cisco continued through the term of the ’607 Patent to publish those instructions, to sell the Catalyst 9300 switches, stack cables, and stack kits, and to deliver the Cisco IOS XE software that performs the accused synchronization and switchover, with the specific intent that its customers perform the claimed method.

176. Cisco, under 35 U.S.C. § 271(c), contributorily infringed at least claim 12 of the ’607 Patent during its term. With knowledge of the ’607 Patent, Cisco sold, offered for sale, and imported into the United States the Cisco IOS XE Stack Manager software that carries out the claimed steps once a stack is formed. That software constitutes a material part of the claimed method, is especially made and especially adapted for stacking, and has no substantial use other than in a stack that performs the method; it is not a staple article or commodity of commerce suitable for substantial noninfringing use. Cisco’s customers directly infringed when they used that software as Cisco intended.

177. On information and belief, Cisco’s customers directly infringed claim 12 of the ’607 Patent during its term when they operated Catalyst 9300 StackWise stacks in the United States, including in this District.

[251] *Catalyst 9300 StackWise White Paper*, *supra* note 84, Active election.

178. Alternatively, during the term of the ’607 Patent, Cisco knew that there was a high probability that the sale, support, and use of the Accused ’607 Products constituted infringement of the ’607 Patent, and took deliberate actions to avoid learning of those facts.

179. Cisco’s infringement of the ’607 Patent was willful from the time Cisco obtained knowledge of the ’607 Patent through the expiration of the ’607 Patent on October 19, 2022. Cisco’s knowledge includes, on information and belief, the March 2017 notice given by Plaintiff’s predecessor in interest. Such willful conduct during the term of the ’607 Patent merits enhanced damages under 35 U.S.C. § 284.

180. Cisco’s acts of direct, induced, and contributory infringement of the ’607 Patent occurred in the United States, including in this District, during the term of the ’607 Patent, and injured and damaged Plaintiff. Because the ’607 Patent has expired, Plaintiff does not seek injunctive relief with respect to the ’607 Patent. Plaintiff has suffered damages as a result of Cisco’s infringement of the ’607 Patent during its term, and Cisco is liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for that infringement, but in no event less than a reasonable royalty, together with interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant as follows:

A. A judgment that Defendant has directly infringed, either literally or under the doctrine of equivalents, each of the Asserted Patents, and, with respect to the ’303, ’931, and ’532 Patents, continues to directly infringe those patents;

B. A judgment that Defendant has actively induced infringement of each of the Asserted Patents during their respective terms, and, with respect to the ’303, ’931, and ’532 Patents, continues to induce infringement of those patents;

C. A judgment that Defendant has contributorily infringed each of the Asserted Patents during their respective terms, and, with respect to the ’303, ’931, and ’532 Patents, continues to contributorily infringe those patents;

D. A judgment and order requiring Defendant to pay Plaintiff damages under 35 U.S.C. § 284 adequate to compensate Plaintiff for Defendant’s infringement, but in no event less than a reasonable royalty, including without limitation damages on convoyed and derivative sales, together with supplemental damages for any continuing post-verdict infringement through entry of final judgment and for infringement not presented at trial, with an accounting as needed;

E. A judgment that Defendant’s infringement of each of the Asserted Patents has been willful during its respective term;

F. A judgment that Defendant’s infringement warrants enhanced damages, up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284;

G. A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and an award to Plaintiff of its reasonable attorneys’ fees;

H. A judgment and order awarding Plaintiff pre-judgment and post-judgment interest on the damages awarded, at the maximum rate allowed by law;

I. A judgment and order awarding a compulsory ongoing royalty with respect to the ’303, ’931, and ’532 Patents for any continuing infringement not enjoined;

J. A judgment granting a permanent injunction with respect to the ’303, ’931, and ’532 Patents that restrains and enjoins Defendant, its officers, directors, divisions, employees, attorneys, agents, servants, licensees, parents, subsidiaries, successors, assigns, and all those in privity, concert, or participation with them from directly or indirectly infringing those patents;

K. A judgment and order awarding Plaintiff its costs of this action;

L. All equitable relief the Court deems just and proper; and

M. Such other and further relief as the Court deems just and proper and to which Plaintiff is entitled.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 22, 2026

Respectfully submitted,

*/s/ Erick S. Robinson*
Erick S. Robinson (Lead Counsel)
Texas Bar No. 24039142
Gregory Love
Texas Bar No. 24013060
**CHERRY JOHNSON SIEGMUND JAMES PC**
104 E Houston Street, Suite 115
Marshall, Texas 75670
Tel: (713) 498-6047
Fax: (713) 583-9737
erobinson@cjsjlaw.com
glove@cjsjlaw.com

Mark D. Siegmund
Texas Bar No. 24117055
"Grace" Shuya Yang
Texas Bar No. 24144144
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Tel: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com
gyang@cjsjlaw.com

***Attorneys for Plaintiff***
***HIGH IQ NETWORKS LLC***